Nioholson, C. J.,
delivered the opinion of the court:
On the 25th of June, 1869, Thos. E. and E. E. Brocchus went to the commission house of John McClennan & Co., in Memphis and placed in the hands of their bookkeeper, B,. B. Hawley, live packages of national currency, each containing $500.00, to be safely kept by the firm for a few days. Hawley executed receipts to' them for their respective amounts, in the name of John McClennan & Go'., and placed the money in the iron safe. About this time Mc-Clennan came in, and was informed by Hawley of the fact that he had received the money on deposit. McClennan being dissatisfied, Hawley suggested that they could deposit the money in the Eirst National Bank in Memphis, and it would swell their bank account. McClennan agreed to> this, and thereupon, on the same day, Hawley deposited the $2,500.00 in the Eirst National Bank in the name of John McClennan <fc Oo., and had the same entered as a credit on their bank or pass book.
In a few weeks afterwards McClennan died, and on the 7th of September, 1869, one of the surviving members of the firm checked out all the deposits then remaining to the credit of the firm, amounting to $4,216, in which amount was included the amount due on the deposit of $2,500 made by Hawley on the 25th of June.. After this money was so collected, it passed into the hands of J. B. Hill, who holds it as receiver of the assets of the firm. The question raised upon these facts, is whether Thos. E. and E. E. Brocchus are entitled to recover the money in the hands of Hill, to the amount of $2,500, or whether the money is to be distributed among the general creditors of John McClennan & Oo’.
It is fully shown by the proof that the two Brocchuses left with John McClennan & Oo>. $2,500 for safe keeping for a few days, with the expectation and understanding that it would be kept in their safe, and. not be used. It is further proved, that in violation of this arrangement, the *669 money, with the consent of McOlennan, was deposited in the bank in the name of McClennan &• Oo.
There can be no dispute that when the money was deposited in the bank, it "was the money of the Brocehuses. They do not seek to follow it into the bank. They insist that when mingled with the other money of the bank, by the general deposit, the bank thereby became their debtor for that amount, and that this indebtedness was evidenced by the entry of the credit on the pass book of McOlennan & Co. They claim that they, and not McOlennan & Go., were the owners of this eividence of indebtedness.
We think the facts sustain these positions, and show that McOlennan & Co. held the evidence of the deposit, and consequently of the debt due. from the bank, as the trustee of the Brocehuses — so constituted by the illegal conversion of their money into this chose in 'action. But the bank paid off and satisfied this debt upon the check of one of the surviving members of the firm of M’cGlennan & C:o., and from that time ceased to be debtor, either to the Brocehuses or to McClennan & Oo., for the $2,500.00 deposit. The money so checked out of the bank by one of the surviving members of the firm of McOlennan & Oo. in satisfaction of the deposit of $2,500.00, made on the 25th of June, 1869, is now under the control of the court, in the hands of Hill as receiver, who insists that it is part of the assets of the firm of McClennan & Oo. of which he is receiver, and subject to distribution among their general creditors.
We are unable to see any principle of law or equity on which the general creditors of McOlennan & Oo. can found a claim to this money. That firm received $2,500 from the Brocehuses as bailees, and in violation of the trust reposed in them, and for the purpose of swelling their bank account, they converted the fund by loaning it to the bank. Afterwards this amount of money is received by them in satisfaction of the indebtedness of the bank, created by the deposit. How can this money, received by McOlennan & *670 Oo. in satisfaction of that amount of the money of the Brocchuses, wrongfully used by them, be now said to be any more their money than it was when they made the deposit? The Brocchuses had the election to hold McClen-nan & Go. responsible for the conversion of their money, or to claim that the indebtedness of the bank evidenced by their pass book belonged to them. They have elected to seek satisfaction out of the proceeds of that indebtedness, now in the hands of their receiver.
No question arises here as to the rights of a bona fide purchaser without notice. The money collected from tho bank by one of the surviving partners of the firm of Mc-Olennan & Oo. has never passed into the hands of an innocent purchaser, but the same money is in the hands of the receiver of the assets of that firm.
The rule, of law governing the case is laid down with clearness by Mr. Story in sec. 229 of his work on Agency. He says: “If an agent has converted the property of his principal into, or invested it in other property, and it can be distinctly traced, the principal may follow it wherever he can find it, and as far as it can be thus traced, subject, however, to the lights of a bona fide purchaser for a valuable consideration without notice. It will make no difference in Jaw, as indeed, it does not in reason, what change of form different from the original, the property may have undergone; whether it be changed into promissory notes, or other securities, or into merchandise, or into stock or into money. For the product of the substitute for the original thing still follows the nature of the thing itself, as long as it can be ascertained to be such; and the right only ceases when, the means of ascertainment fail.” See Moffit v. McDonald, 11 Hum., 460; 2 Story Eq., sec. 1258; 1 Perry Trusts, sec. 463.
It is laid down in the last named authority that if a trustee deposit trust money with his own money in a bank, in his own name, the withdrawal of part by the trustee, *671 will not defeat the right of the cestui que .trust. The rule to be applied in such eases is, that the checks are to be applied to the earliest items of the deposit, whether of the trust fund or the trustee’s own money, and such earliest items will be reduced pro tanto. If anything of the trust fund remains in the hands of the banker under this rule, it will be applied to the purposes of the trust. This is a rule for the protection of the cestui 'que trust in case of the failure or bankruptcy of the trustee.
These authorities establish the doctrine that where a trustee deposits the funds in his individual name, and thereby mingles them with his own funds, the cestui que trust may proceed against him for the conversion; but if he be insolvent, the cestui que trust may have satisfaction out of whatever funds may be found in the bank to his credit, which appear by the dates of the deposits and the checks to be the trust funds so converted. Hence, the Brocchuses might have subjected the funds in the bank, upon this rule, if they had proceeded before the trustee had withdrawn it all from the bank. So long as the funds so withdrawn remain in the hands of the trustees, it continues to be subject to be reached by the cestui que trust, because it is identified as the proceeds of the original trust fund converted.
The same principle was announced by Judge Story in the case of Thompson v. Parker, 3 Mason, 232, in which he said: “Nothing is better settled at the present day than the doctrine that the principal is entitled to recover whenever he can trace his own property and distinguish it or its proceeds from the mass of property of his factor.” And he added with much force: “Upon reason, upon the nature of the contract, upon general justice and equity, the proceeds of -property ought to belong to the owner, if it is distinguishable from that of the factor.”
The correctness of Judge Story’s concluding remark is fully illustrated by the facts of the case before us. It is *672 a contest between tbe general creditors oí an insolvent firm and complainants as to tbe distribution of a fund which was clearly the property of complainants and still so continues, unless it has ceased to be theirs by the wrongful act of tbe firm in appropriating it in violation of the trust reposed in them. If complainants have lost their title to the money, it has been by the operation of a highly technical rule of law, and one so liable to result in injustice, that courts of equity have been compelled to recognize exceptions to it for the purpose of attaining justice. We think the present case falls within one of these well recognized exceptions, which enables us to avoid a gross wrong to complainants, and which works no injustice to the general creditors, who are only entitled to share in the assets which belonged honestly to their debtors. 1 Story Eq. Jur., secs. 468, 623; Whitley v. Foy, 6 Jones Eq., 34.
The decree of the chancellor will be reversed and a decree entered here for complainants in accordance with this opinion. The costs will be paid by the receiver out of the funds in his bands.