## AKIN *v.* JONES.

### (*Nashville.* January 17, 1894.)

1. BANKS AND BANKING. *Relation of collecting bank to its customer. General assignment.*

   A customer, for whom a bank makes a collection and remits the fund collected by check upon another bank, which is not paid upon presentation, becomes a mere creditor of the collecting bank for the amount of such fund, and entitled to share only *pro rata* with other general creditors under a general assignment subsequently made by the bank, unless, by special contract, express or implied, the bank was constituted trustee of such fund for its customer, and the fund remains susceptible of identification. (*Post, pp. 360–364.*)

   Case cited and distinguished: 5 Am. St. Rep., 85.

2. SAME. *Same. What constitutes collection.*

   And the collecting bank, not its assignee, has, as between itself and customer, effected the collection of the latter's debt, and become debtor for the fund, where the bank, before making a general assignment, accepted, in absolute payment of the debt, the check of its customer's debtor upon itself, overdrawing his deposit, and this overdraft was subsequently collected of the drawee by the assignee of the bank, for benefit of all its creditors. (*Post, pp. 360–364.*)

   Case cited: Howard & Co. *v.* Walker, 92 Tenn., 456.

3. SAME. *Rights of holder of protested check.*

   A bank's check in favor of its creditor, upon its funds standing to its credit in another bank, which the latter bank declines to accept or pay, does not operate as an equitable assignment to the payee of any part of the drawer's fund on deposit in the drawee bank, so as to give the payee a prior claim upon the fund when it is collected and distributed under the drawer bank's subsequent assignment for the benefit of all its creditors. (*Post, pp. 364–368.*)

   Cases cited and approved: Imboden *v.* Perrie, 13 Lea, 504; 71 N. Y., —; 83 N. Y., 318; 46 N. Y., 87.

   Cited and distinguished: Springfield *v.* Green, 7 Bax., 302; Schoolfield *v.* Moon, 9 Heis., 173; Bank *v.* Merritt, 7 Heis., 193.

Akin *v.* Jones.

4. ASSIGNMENT, GENERAL.   *Assignee's attitude.*

Doctrine re-affirmed that an assignee takes the debtor's estate, under a general assignment for benefit of his creditors, not as a purchaser for value, but as a volunteer and representative of the assignor, and subject to all equities and defenses that would have been available against the assignor himself.   (*Post, p. 364.*)

Case cited and approved: Trust Co. *v.* Bank, 91 Tenn., 336.

---

FROM MAURY.

---

Appeal from Chancery Court of Maury County. A. J. ABERNATHY, Ch.

SAM HOLDING, E. H. HATCHER, and GEORGE T. HUGHES for Akin.

J. C. MCREYNOLDS for Jones.

MCALISTER, J.   The question presented in this record, stated in general terms, is, whether the holder of two certain checks drawn by the Bank of Columbia prior to making a general assignment, is entitled to payment in full out of certain funds in the hands of the assignee of said bank, or whether said check holder is merely a general creditor of said bank, and, as such, only entitled to a ratable share in the distribution of its assets. It appears from the record that on October 17, 1891, the Bank of Columbia made a general assignment for the benefit of its creditors. The

trustee named in the deed having declined to serve, A. N. Akin was duly appointed and has been administering the trust. The present bill was filed by the trustee against the creditors of said bank for the settlement of all matters growing out of said trust, and for the adjudication of all questions of priorities.

The defendants, J. W. Manier & Co., are merchants doing business in Nashville, and, on or about September 29, 1891, inclosed to the Bank of Columbia a draft on Massey & Son, of Lipscomb, Tenn., for the sum of $137.20, drawn by Manier & Co. to their own order and indorsed by said firm to the Bank of Columbia for collection. Massey & Son, the drawees of said draft, on October 15, 1891, gave their check on the Bank of Columbia in payment of said draft, which overdrew their account in said bank in the sum of $102.12. It appears that Massey & Son had to their credit in said bank, at the time of drawing the check, the sum of thirty-five dollars. The draft was canceled by the bank and delivered up to Massey & Son. Manier & Co., in their letter inclosing the draft for collection, had directed the bank to remit the proceeds in New York exchange. On October 16, 1891, the Bank of Columbia sent to Manier & Co. its check on the Merchants' National Bank of Louisville, covering proceeds of draft on Massey & Son. Manier & Co. received said check on October 17, and immediately telegraphed to the Merchants' National

Bank of Louisville to know if this check would be paid, and were informed that it would not be paid. It appears that on the same day the Bank of Columbia made a general assignment for the benefit of its creditors. Manier & Co., on the same day, returned this check to the Bank of Columbia, informing its cashier they would claim payment in full out of the assets of said trust. It further appears, that at the time Manier & Co. received the draft on the Merchants' National Bank of Louisville, Ky., there was to the credit of the Bank of Columbia in said Louisville bank something over $2,250. All drafts drawn on the Louisville bank by the Bank of Columbia subsequent to October 14, 1891, were refused payment when presented. Some time after the assignment, the Merchants' National Bank of Louisville, with the assent of the trustee of the Bank of Columbia, but without the knowledge of Manier & Co., paid out of the funds to the credit of the Bank of Columbia such drafts as had been presented to it, in the order of presentation, until the whole fund was exhausted. The telegram sent by Manier & Co. to the Merchants' National Bank was received, and payment of their check refused, before the presentation of many of the drafts which were afterwards paid. No offer has been made to pay the draft held by Manier & Co., and there are now no funds with which to pay it to the credit of the Bank of Columbia in the Louisville bank. It further appears, that after the affairs of the

Bank of Columbia went into the hands of the assignee, Massey & Son paid their overdraft, amounting to $102.12, in full to said assignee. This is a full statement of facts appearing in the record with respect to the check on the Merchants' National Bank of Louisville given by the Bank of Columbia to Manier & Co. for the proceeds of their draft on Massey & Son.

The other claim of Manier & Co. is based upon the following statement of agreed facts: It appears that, on or about September 8, 1891, Manier & Co. inclosed to the Bank of Columbia for collection the note of W. K. Stephens, dated July 3, 1891, payable to the order of Manier & Co., and due October 1 thereafter, for the sum of $195.95. The bank was directed to remit the proceeds of the note to Manier & Co. in New York exchange. On October 13, 1891, W. K. Stephens, the maker of this note, paid it by an overdraft on the Bank of Columbia. At the time his check was given, the account of Stephens was overdrawn in the sum of $1,100, and had remained overdrawn since May 31, 1891. On October 13, 1891, the Bank of Columbia sent to Manier & Co. their check on the Importers' and Traders' National Bank of New York for the sum of $195.45, with the advice that it was given for the amount collected on the Stephens note. This check was received in due course of mail by Manier & Co. and at once forwarded by them to New York and presented for payment. Payment was refused, and thereupon

the check was protested and all proper notices given. Manier & Co. immediately notified the trustee for the Bank of Columbia, and made claim on him for the full amount of the check.

As already stated in connection with the Massey & Son draft, the Bank of Columbia, on October 17, 1891, made a general assignment for the benefit of its creditors. It further appears, that when the check was presented to the Importers' and Traders' National Bank of New York, there was to the credit of the Bank of Columbia in the New York bank sufficient funds to meet it. Subsequent to presentation of defendant's check, the Importers' and Traders' National Bank paid to the trustee of the Bank of Columbia the balance to the credit of said bank, and this amount the trustee now holds as a separate fund, subject to the orders of the Court in this case. It should be stated that, after the affairs of the bank went into the hands of the assignee, it was ascertained that Stephens' account was overdrawn on October 16, the last day the bank transacted business, in the sum of $1,400, and that it had been overdrawn more than $300 since July 31, 1891. The assignee, acting upon advice of counsel, afterwards compromised and settled Stephens' overdraft, realizing something more than fifty per cent. of same, which went into the trust fund.

Upon the foregoing facts the Chancellor decreed, viz.: First, that Manier & Co. had the right to repudiate the check on Louisville given by the

Bank of Columbia in payment of the Massey & Son draft, in violation of instructions to send New York exchange. Second, that in respect to the amount of Massey & Son's overdraft on the Bank of Columbia—to wit, the sum of $102.12—which was made by paying to the said bank the draft of Manier & Co. on Massey & Son, and which was collected by the trustee of said bank after its failure, that, as to this amount, Manier & Co. were entitled to be paid in full and in preference to the general creditors of said bank. Third, but as to the sum of thirty-five dollars which Massey & Son had on deposit when they gave their check to the bank for the draft of Manier & Co., and which, therefore, the bank actually received before its failure, that, as to this amount, Manier & Co. were not entitled to be paid in full in preference to the general creditors of said bank, but were only entitled to receive their *pro rata.* Fourth, that, as to the Stephens' collection, Manier & Co. accepted the check on the Importers' and Traders' National Bank in payment of said collection, but that said check was not an equitable assignment *pro tanto* of the funds of the Bank of Columbia in the hands of the New York bank, and which afterwards came into the hands of the trustee of the Bank of Columbia, and that, therefore, Manier & Co. were only general creditors of said Bank of Columbia, and, as such, were only entitled to receive their *pro rata* upon said note.

From so much of said decree as adjudges that

Manier & Co. are entitled to be paid in full the sum of $102.12 in preference to the general creditors of the Bank of Columbia, the complainant, A. N. Akin, appealed, and has assigned errors. The defendant, Manier & Co., have appealed from so much of said decree as adjudges that they are only entitled to receive their *pro rata* upon the check of the Bank of Columbia on the Importers' and Traders' Bank of New York, given in payment of the Stephens note.

It is assigned as error by counsel for A. N. Akin, trustee, that the Chancellor adjudged that Manier & Co. were entitled to be paid in full, in preference to the general creditors, the amount of Massey & Son's overdraft, which was collected by the trustee. It is insisted, on behalf of the trustee, that, although indorsements for collection vest no title to the draft in the bank, and if the draft is collected by the trustee of the bank after its failure, the law impresses a trust upon the proceeds in favor of the owner, yet, if the draft is collected by the bank before its failure, and while it is a going concern, and the transaction of payment is complete between the bank and the drawee, then the relation of the bank to the owner of the draft is that of debtor and creditor and there is no trust in favor of the owner, and he has no preferred lien upon the assets of the bank in the hands of the assignee, but can only take his *pro rata* share in the distribution of the assets.

On the other hand, it is insisted on behalf of

Manier & Co., that when paper is sent to a bank indorsed for collection, with instructions to remit the proceeds, the bank holds said paper as the agent or trustee for sender, and funds collected on same are trust funds, held by it for sender; that the bank in this case held the collections, as agent or trustee, charged with the duty to collect them in money, which, if received, would have been a trust fund, but as the bank improperly received an overdraft or debt against the maker, the owners of the collection can claim these overdrafts or debts in the hands of the assignee. Defendants Manier & Co. further insist, that if these overdrafts, made to pay their drafts, were afterwards paid to the assignee, it amounted, in a Court of Equity, to a payment of the collections themselves.

The general rule on this subject is, that an indorsement for collection vests no title to the paper in the bank, and if the paper passes into the hands of the assignee after insolvency, the owner may recover it specifically, or, if the assignee collects the paper, the owner may recover the proceeds. But if the bank makes the collection before the assignment, it simply becomes an ordinary contract debtor of the owner, and he cannot impress any trust upon the proceeds. Morse on Banking, Vol. I., Sec. 248. Of course there may be special facts in a case which will take it out of the ordinary rule, and create a trust in the funds collected. Such special facts were found in the case of *Continental National Bank* v. *Weems*, 5 Am.

State Reports, page 85, cited by counsel for defendant. In this case the agreement between the two banks in reference to the proceeds was that "they should be preserved by said bank as the property of the complainant, and returned to it as such." The Court thought these special facts settled the question of trust in favor of the complainant. But the rule undoubtedly is, that unless there is some agreement or course of dealing whereby the funds are to be held separate and the identical proceeds remitted, the owner of the drafts stands upon no higher ground than the other creditors of the bank in a case where the bank collects the draft prior to making a general assignment.

It will be noticed that in this case Manier & Co. directed the bank to send New York exchange —that is to say, Manier & Co. directed the Bank of Columbia to send them its check on New York in payment of the proceeds of collection. As stated by counsel, "this is the determining fact in the record. It was virtually an express direction not to send the identical moneys collected nor to hold them separate for Manier & Co., but was equivalent to an agreement that the bank might use the money collected and pay Manier & Co. by its check on New York. Any agreement or understanding or course of dealing whereby the bank is to use the identical moneys collected and substitute its own obligation in its stead, destroys all idea of a trust."

It is argued, however, that the overdrafts made by the drawees on the Bank of Columbia to pay their drafts due to Manier & Co., were afterwards paid to the assignee, and such payment amounted, in a Court of Equity, to a payment of the drafts themselves to the assignee. This view of the case cannot be maintained. The transaction between the bank and Massey & Son and W. K. Stephens, the drawees of the drafts, was a completed transaction. Massey & Son and Stephens gave their checks on the Bank of Columbia for the amount of the drafts drawn against them, respectively, and the drafts were canceled and delivered up to the drawees. The fact that the bank allowed the drawees to overdraw their accounts, does not affect the question of payment. In his work on Commercial Paper Mr. Randolph says: "If the holder of a bill directs that it be paid to a certain banker, procuring credit with such banker will amount to a payment of the bill. So, if the amount of a note is credited to a bank holding it for collection (according to the custom of dealing between the banks), it will be a payment, although the bank making the note and giving the credit failed on the day it was so credited." Randolph on Com. Paper, Vol. III., Secs. 1395–1456.

The doctrine has been extended, and collecting banks have been recognized as authorized to receive their own certificates of deposit in payment, and the debtor is discharged, even though the bank

fails before remitting.     See *Howard & Co.* v. *Walker,* 8 Pickle, 456.

The next question presented is in respect to the check given by the Bank of Columbia on the Importers' and Traders' National Bank of New York in payment of the Stephens note.     It is insisted by counsel for Manier & Co. that they are entitled to be paid in full, for the reason that this check was an equitable assignment *pro tanto* of the funds of the Bank of Columbia in the hands of the New York bank, and that, the New York bank having refused to pay the check, and having returned the funds in its hands to the trustee of the Bank of Columbia, defendants are entitled to the payment of this check in full.     It is insisted that the assignee for the benefit of creditors takes the property and choses in action of his assignor, not as a purchaser for value, but as a volunteer, and therefore subject to all the defenses and equities against them in the hands of the assignor, and not only so but that he holds as the representative of the assignor and his estate.     This principle is well settled, and will not be further noticed. *Nashville Trust Co.* v. *Fourth National Bank,* 7 Pickle, 336.

The other question, however, in respect to equitable assignments, is involved in much conflict of authority.     Mr. Morse, in his work on Banking, Vol. II., Sec. 493, formulates the question thus: "Is a check an equitable assignment between the drawer and a *bona fide* holder for value, so that

the latter will be preferred over general creditors of the drawer in case of his insolvency before the check is cashed?" The author answers the question by stating that "the most numerous body of decisions sustains the view that a check is neither a legal nor an equitable assignment as between drawer and payee, nor a sufficient foundation for any action by the holder against the bank." The author qualifies the statement with the remark that there may exist special facts giving an equation of easy solution, as if the check is drawn on a designated fund, or is accepted by the bank, or, if the bank charges the amount to the drawer or settles with him on the basis of allowing for the check. In these and other instances enumerated, the author states there is no doubt the bank can be held in an action by the holder. Counsel for Manier & Co. cite several *dicta* to be found in our own cases, to the effect that a check is an appropriation by the debtor of so much of his deposit in bank to his creditor. See *Springfield* v. *Green*, 7 Bax., 302; *Schoolfield* v. *Moon*, 9 Heis., 173; *Planters' Bank* v. *Merritt*, 7 Heis., 193. It will be found, upon an examination of these cases, that the only question presented for adjudication was in respect to the liability of the drawer—whether he was discharged by the failure of the holder to present his check in a reasonable time—the bank in the meantime having become insolvent. The case of *Imboden* v. *Perrie and Wife*, 13 Lea, 504, involved more of the features presented in this case than any other

reported in this State.   In that case the question
arose between creditors.   One creditor held a check
of the debtor against a general deposit of the
debtor in bank, while the other was an attachment
creditor of that fund.   The question was fairly
raised in that case whether the check worked an
equitable assignment of the fund in bank to the
check holder before the presentation of the check
or notice to the bank.   If so, the check-holding
creditor was entitled to priority.   If not, then the
attachment had priority.   Judge Turney, in deliv-
ering the opinion of the Court against the de-
fendant's theory of equitable assignment, cited ap-
provingly the opinion of Chief Justice Church in
*Attorney-general* v. *Continental National Bank,* 71
New York, to the effect that "checks drawn in the
ordinary form, not describing any particular fund
or using any words of transfer of the whole or
any part of any amount standing to the credit of
the drawer, but containing only the usual request,
are of the same effect as inland bills of exchange,
and do not amount to an assignment of the funds
of the drawer in bank.   This doctrine," he con-
tinues, "accords with the relation between the par-
ties.   Banks are debtors to their customers for the
amount of their deposits.   A check is a request
of the customer to pay the whole or a portion of
such indebtedness to the bearer or to the order of
the payee.   Until presented and accepted, it is in-
choate, it vests no title, legal or equitable, in the
payee, to the fund.   Before acceptance, the drawer

may withdraw his deposits. The bank owes no duty to the holder until the check is presented for payment. Knowledge that checks have been drawn does not make it obligatory upon the bank to retain the deposits to meet them. These rules are indispensable to the safe transaction of commercial business."

It is contended by counsel for Manier & Co. that the case of *Imboden* v. *Perrie and Wife* did not raise the identical question here presented. It is insisted that the question in that case arose between creditors, but that the question presented here is between the drawer and the payee of the check, the assignee standing in the shoes of the drawer. The case of *Attorney-general* v. *Continental Life Ins. Co.*, 71 New York, cited with approval by Judge Turney in the 13 Lea case, presented the exact state of facts found in this record. In that case the insurance company gave its check upon a trust company in payment of a loss, the company having at the time on deposit a sum exceeding the amount of the check, but, prior to its presentation, a receiver of the insurance company was appointed, who withdrew all the funds deposited with the trust company. In an action by the check holder against the receiver to recover the full amount of the check out of the funds in his hands, it was held by the Court of Appeals of New York that the check, not having been drawn on a particular fund, was not an equitable assignment *pro tanto* of a general deposit,

Akin *v.* Jones.

and that the check holder was not entitled to payment in full in preference to the claims of other creditors. See, also, *Risley* v. *Bank*, 83 N. Y., 318; *Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y., 87.

We are of opinion that the great weight of authority is opposed to the contention of defendant, and establishes the doctrine that the delivery of a check against a general deposit is not a legal or equitable assignment of any portion of the fund.

The decree of the Chancellor, to the extent that it allows defendants priority in the payment of the Massey & Son overdraft, is reversed, and in all other respects affirmed. The costs will be paid by the trustee.