In Equity.

HERBERT A. FOGG vs. LINWOOD C. TYLER.

JAMES M. BARTLETT, Petitioner for allowance of claim as a priority.

Penobscot.    Opinion June 11, 1912.

*Agents. Brokers. Fiduciary. Trust. Insolvency. Rights of Creditors.*

Payment for corporate shares to a stock brokerage firm does not give the buyer priority as to his claim for return of the money on receivership proceedings against the firm before the stock could be secured by the firm, though the firm's balance in the fund in which the payment was deposited never fell below the amount of the payment; the transaction being an ordinary stock sales contract, and involving no fiduciary relation between the parties.

On report.    Petition dismissed.

Petition for the allowance of petitioner's claim as a priority in the matter of the receivership of Tyler, Fogg & Company of Bangor, Charles H. Bartlett, Receiver.    At the conclusion of the evidence the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Charles J. Dunn,* for petitioner.

*Charles H. Bartlett,* for defendant.

*E. M. Simpson,* by permission of Court, for committee of unsecured creditors.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

HANSON, J.  On report.  Petition for allowance of claim as a priority.

The record shows that prior to April 26, 1911, the petitioner corresponded with Linwood C. Tyler, of the firm of Tyler, Fogg & Company, of Bangor, in relation to the purchase of stocks; that on that day he called at the office of Tyler, Fogg & Company, and

"told Mr. Tyler, after some little conversation, that I had decided to take ten shares of the Commonwealth Gas & Electric Company stock"  .  .  .  "and he very hastily calculated the interest and I made out a check for the amount he stated, which was $1004.33, I think, and I didn't have time that evening to get my receipt, for the car came right along.  I gave him my check and the next morning Mr. Tyler mailed me a receipt, and stated I had overpaid him seventy-two cents, and enclosed 72c. in stamps."

The case shows that Tyler, Fogg & Company had contracted with Messrs. C. D. Parker & Company, of Boston, for 750 shares of the Commonwealth Gas & Electric Company "with the arrangement that they were to carry it and as fast as we desired it, we should take it up from them."  Tyler, Fogg & Company had advertised the stock for sale and the petitioner says that Mr. Tyler had given him "literature and also written me in regard to the stock. I had looked it up somewhat."

Mr. Tyler, who had charge of stock sales, was called to Boston later in the evening and did not return until after the fire which destroyed his premises in the great conflagration of April 30, 1911. He returned immediately, and on May 5th received a letter from the petitioner, inquiring when the stock  would be delivered.  His letter in reply follows:

Tyler, Fogg & Co.
    Bankers                                        May 6, 1911.
Bangor, Maine.
Dealer in Bonds.
Mr. J. M. Bartlett,
    Orono, Maine.
Dear Sir:

In relation to the delivery of your certificate carrying ten shares of Commonwealth Gas & Electric Co. Preferred Stock, we beg to say that, as soon as we can get established and our vaults open, we will be in a position to make delivery to you of your certificate carrying the ten shares of stock.

Our vaults look to be in good shape, and we expect that the contents will be found intact.

                Yours very truly,
                      TYLER, FOGG & CO.

The stock was not delivered. The reasons given by Mr. Tyler for the non-delivery of the stock were that his call to Boston gave him no time in which to order it on April 26, 1911, and the confusion incident to the fire causing delay in re-establishing business quarters and having access to their books and papers after his return, and that later when delivery might have been effected he was prevented by suit for the dissolution of the partnership of Tyler, Fogg & Co., and the appointment of a receiver, against whom this petition is filed.

It is admitted that the check was deposited by the firm of Tyler, Fogg & Co., the payees named therein, to the credit of said firm, in the Kenduskeag Trust Company, at Bangor, Maine, on the 27th day of April, A. D. 1911, and collected by said bank for the account of said firm; and that ever after, to and including the time of the appointment and qualification of the Receiver, the balance of the account of said firm in said bank was ever in excess of said sum of $1003.61, and that said account between said times was not at any time overdrawn, and that the amount of the balance of said account in said bank has come to the possession of the Receiver in this cause.

It is further admitted that no certificate for any shares of the capital stock of said Commonwealth Gas & Electric Company have ever come to the possession of said Receiver.

It is admitted that Charles H. Bartlett, of Bangor, Maine, was appointed as Receiver for the partnership of Tyler, Fogg & Co. by decree dated June 6, 1911, and that he qualified as such and entered upon the discharge of the duties on the 9th day of June, 1911; and that on that date he took possession of the assets of the estate of said partnership.

And the petitioner prays, 1.—that the Receiver may be ordered to deliver the stock, if he be in a position to do so, or, 2.—to return the money paid, amounting to $1003.61, and for other relief.

In order to maintain this action the petitioner must show;—
1. That the Receiver had specific property belonging to him, or
2. That there was a fiduciary relation between the petitioner and Tyler, Fogg & Company, by and through which the latter agreed to procure for the petitioner as his agent ten shares of the capital stock of said Commonwealth Gas & Electric Company.

In view of the admission that "no certificate for any shares of the Commonwealth Gas & Electric Company have ever come to the possession of said Receiver," it is not necessary to consider the first item in the prayer for relief. The petitioner does not seriously urge its consideration, but does insist that there was a fiduciary relation between the parties, "that the relation between the parties was that of agent and principal, or of trustee and cestui que trust," and cites *Furber* v. *Dane,* 203 Mass., 108-112, in support of his contention. In that case the plaintiff was an employee of a firm of stock-brokers. He gave the firm an order to sell for him twenty shares of Copper stock, and they sold fifteen of these shares for $757.50, for which sum, upon delivery of the certificate they received a check in payment, which check they deposited in their general account with the American Trust Company which collected it. Upon the same day the firm gave to its customer a check for his share of the proceeds of the stock sale; on the next day it made an assignment for the benefit of its creditors, and on the following day the check was presented at the bank by the payee named therein for payment. The firm's balance in the American Trust Company, at no time after the deposit of the check for $757.50, fell below that amount. The plaintiff contended that the balance of the account in the bank was affected with a trust in his favor to the extent of the amount due to him. He contended that when the proceeds of his stock were received by the firm, he became entitled thereto, and that being able to trace these proceeds into the account and into the balance remaining on deposit at the time of the bank's failure, he showed a trust attaching in his favor to that balance, quoting *Cole* v. *Bates,* 186 Mass., 584, *National Bank* v. *Insurance Co.,* 104 U. S., 54-68, In re Hallett's Estate, 13 Ch. D., 696.

The decision of the case turned upon the point that the presentment of the check for payment was not in due season, but with reference to the contention of the plaintiff the court said: "It would be difficult to deny this contention if it appeared that the firm stood in a fiduciary relation to him as to the proceeds of his stock, and that none of the other parties had equities superior to and countervailing his."

After a careful consideration of the testimony we are unable to agree with counsel for the petitioner that the facts in the case sup-

port his theory. It is not contended that Tyler, Fogg & Company agreed to use the identical money represented by the check for the purpose of purchasing the ten shares of stock, and it does not appear that they were acting as agents of the petitioner. It does appear that the petitioner was a voluntary buyer of stock of his own selection, and so far as the case shows there was at the moment entire good faith on both sides of the contract. The transaction from petitioner's own showing did not create a trust relation between the petitioner and Tyler, Fogg & Company. The negotiations were such as ordinarily occur between a buyer and seller in ordinary financial and commercial transactions. Tyler, Fogg & Company had the stock for sale and wanted to sell; the petitioner wanted to purchase, and did purchase and pay for ten shares of stock, with the knowledge that the stock would not be delivered until some days later. There was no mention of agency and no language used from which the relation of principal and agent can be inferred. The petitioner stood in the same relation to Tyler, Fogg & Company as an ordinary buyer in an ordinary commercial transaction where no question of principal and agent is ever raised.

"One having purchased and paid for a specific quantity of an article, acquires no title to it until separated from the residue. Until such separation, the claim of the vendee rests in contract, for breach of which the remedy is by action. A purchase of growing crops, though paid for, passes no title against the creditors of the vendee, until possession or delivery be had. Unless such possession or delivery be had, prior to the death of the vendor and to the issuing of the commission of insolvency upon his estate, the title is in the administrator in trust for creditors." *Stone* v. *Peacock*, 35 Maine, 385.

In *Downing* v. *Lellyett,* Court of Chancery Appeals of Tenn., February 8, 1896, 36 S. W. Rep., 890, the plaintiff requested a bank to purchase for him certain stock on margins. The bank purchased it, through brokers, and made a draft on the plaintiff for the margins, which was paid. The bank remitted the amount by draft to its correspondent, and sent a check on such correspondent to the brokers, but by reason of the bank's failure, the brokers did not obtain the money, and re-sold the stock. The amount remitted was eventually recovered back by defendant as the bank's assignee.

*Held* that the transaction between the plaintiff and the bank did not contemplate the purchase of the stock with plaintiff's own money, but by the bank with its own funds, and created the relation of creditor and debtor between them, and not of principal and agent, and that the plaintiff could not recover the amount paid from the defendant's assignee as a trust fund, though traced into his hands. *Akin* v. *Jones,* 93 Tenn., 353, 27 S. W., 669, is quoted with approval. It is there said; "Any agreement or understanding, or course of dealing whereby a bank is not to use the identical money, and is to substitute its own obligation in its stead, destroys all idea of a trust."

It is the opinion of the Court that there was no fiduciary relation between the firm of Tyler, Fogg & Company and the petitioner, and the entry must be,

· *Petition dismissed with costs.*