I. C. R. R. CO. v. PEOPLES BANK, et al.

and

GEORGE M. BROOKS & CO. v. PEOPLES BANK, et al.

Western Section.    November 15, 1928.

Petition for Certiorari denied by Supreme Court, February 9, 1929.

Harry E. Jones, of Dresden, and C. N. Burch, of Memphis, for appellant.

George C. Rowlett, of Dresden, for appellee.

OWEN, J. The Illinois Central Railroad Company and George M. Brooks & Company have both appealed from a decree dismissing their bills and denying them any relief. The two causes were consolidated in the lower court and heard together, the bills were filed alleging that each complainant was a preferred creditor of the Peoples Bank which had been closed by the state banking department on the evening of September 21, 1927. The Illinois Central Railroad Company was not a depositor in the Peoples Bank of Martin, Tennessee. The agent of said railroad company at Martin, Tennessee, remitted his daily collections to the treasurer of the Railroad Company in Chicago, on September 15, 16, 17, 19, 20 and 21, 1927, this agent took his cash collections for the day to the Peoples Bank and purchased drafts or checks of the Peoples Bank drawn on the Fourth & First National Bank of Nashville, Tennessee, and payable to the Illinois Central. These drafts were sent by the railroad agent to the treasurer of the railroad of the railroad company in Chicago who deposited same in a Chicago bank and this Chicago bank sent same in due course of business to the Fourth & First National Bank of Nashville for payment. None of these drafts or checks was paid, as the Peoples Bank had no funds in the Fourth & First National Bank of Nashville to meet these drafts. The drafts purchased were as follows:

September 15th, 1927. Draft No. 19861 $240.00
September 16th, 1927. Draft No. 19868 $140.00
September 17th, 1927. Draft No. 19879 $220.00
September 19th, 1927. Draft No. 19884 $490.00

September 20th, 1927. Draft No. 19891 $430.00
September 21st, 1927. Draft No. 19898 $380.00

At the time of the purchase on September 15th of the draft for $240 and on September 16th of the draft for $140, the Peoples Bank did have a balance in the Nashville bank of more than the amount of these two drafts, but not more than the amount of these two drafts and drafts previously issued which had not reached the Nashville bank for payment. The balance was therefore only an apparent balance and not a real balance. This is shown by the state of the account of the Peoples Bank with the Nashville bank. At the close of business on September 15th the Peoples Bank had on deposit with the Nashville bank $6,117.48. At the close of business on September 16th the balance was $2,151.04, whereas, on September 17th the Peoples Bank had an overdraft in the Nashville bank of $1,206.42. Thereafter there was continuously an overdraft up to the time of the closing of the Peoples Bank on the 21st instant. It is clear, therefore, that on September 15th and 16th the date the first two drafts were purchased, the Peoples Bank had issued more drafts or checks against its Nashville account than it had money to meet same. It is a plain case, so far as September 15th and 16th are concerned, of the bank having on deposit with its correspondent bank a balance totally insufficient to meet the drafts or checks which the Peoples Bank had drawn against this balance in the Nashville bank. On and after September 17th the checks were drawn against a positive overdraft. During all this time the bank was insolvent and known by its officers to be insolvent. In fact, the insolvency had continued for a long time and had been brought to the attention of the officers of the bank in several ways. It appears that the Peoples Bank had attempted to consolidate with another Martin Bank a short time previous. The other bank refused the consolidation on account of the bad loans which the Peoples Bank had among its assets.

The Chancellor held that at the time of the purchase of all these drafts the bank was insolvent and known by its officers to be insolvent, the proof indicates that the bank held bills receivable for about $92.000. It is estimated by witnesses who know the value of the security, that from thirty to fifty per cent will be realized on these notes. The bank had deposits at the time it closed amounting to about $112,000. It had issued exchange or drafts on its correspondent to the extent of more than $10,000, which drafts were not paid. It is the railroad's contention that:

"This is not a case between a banker and a depositor establishing the simple relation of creditor and debtor but a case of seller and purchaser where a party was induced to part with

his property by fraud, thereby making the perpetrator of the fraud a trustee ex maleficio.''

The facts in the case of George M. Brooks and Company against the defendant bank, or receiver, are as follows:

Brooks drew a check on the bank of Martin for $1000, payable to a merchant at Greenfield, Tennessee, this merchant deposited the $1000 check in the bank at Greenfield which forwarded the check to its correspondent in Memphis, Tennessee. The Memphis correspondent forwarded the check to a bank in St. Louis, Mo., this bank sent the check to the defendant bank, the defendant bank presented the check to the bank at Martin and received $1000. The defendant bank issued its draft on the Fourth and First National Bank of Nashville, Tennessee for this $1000 and remitted the $1000 draft to the First National Bank of St. Louis, Mo. This $1000 was collected two days before the bank closed. The Fourth and First National Bank refused payment of the said $1000 draft. There is a stipulation in the record and among other things it is agreed that all the parties, except the defendant, who handled said drafts drawn on the Fourth and First National Bank of Nashville, were not guilty of any negligence. It is further agreed that the Peoples Bank at the close of business on September 14th, 1927, had on deposit with the Fourth & First National Bank $6,920.54; at the close of the day's business on September 15th, 1927, it had on deposit to its credit a balance of $6,117.48; at the close of business on September 16th, 1927, a balance to its credit of $2,151.04; on September 17th, 1927, the Peoples Bank had an overdraft of $1,206.-42, with the Fourth & First National Bank; at the close of business on September 19th, 1927, this overdraft increased to $6,658.68; and on September 20th, 1927, the overdraft had increased to $10,745.95; and at the close of the day's business on September 21st, 1927, the overdraft had decreased to $392.64.

One of the defenses made by the receiver and the defendant bank is that L. G. McMillan, agent of the Railroad Company, was a director of the Peoples Bank and that the Railroad Company, by this fact, had knowledge of the conditions of the bank. The Chancellor recognized the appellants as being general creditors but was of the opinion that neither appellant was entitled to preference and that each would have to share on the same basis as other general creditors. The two appellants have assigned similar errors which raise the following proposition:

The Chancellor erred in dismissing complainant's bill.

The Chancellor erred in denying preference to the claim of the appellant Illinois Central Railroad Company on the six drafts aggregating $1900 and on each of them.

The Chancellor erred in failing to decree that the appellant Illinois Railroad Company was entitled to a preference on the six drafts and on each of them and erred in refusing to decree that the appellant was entitled to be paid in full out of the assets which went into the hands of the receiver.

George M. Brooks has similar errors, he is only seeking to recover as a preferred creditor, to the extent of $1000. The Railroad Company submits the following propositions of law:

An insolvent bank which sells a draft or drafts knowing that its correspondent bank has no funds with which to pay same obtains money therefor wrongfully and fraudulently and holds it in trust for the purchaser a claim therefor against the bank or receiver is entitled to a preference. Whitcomb v. Carpenter, 134 Iowa, 227, N. W. 825, 10 L. R. A. (N. S.) 928; Widman v. Kellogg, 22 N. D., 396, 133 N. W., 1020, 39 L. R. A. (N. S.), 563; 3 R. C. L., Sec. 184, p. 557; 7 C. J., 751.

It is sufficient tracing of the funds into the hands of the receiver if it appears that the money coming into his possession exceeds the amount of the trust fund. Brown v. Sheldon State Bank, 139 Iowa, 83-90; Messenger v. Carroll Trust & Savings Bank, 193 Iowa, 609-610; Whitcomb v. Carpenter, 134 Iowa, 227-230; Leach v. Farmers Savings Bank of Hamburg, 213 N. W., 414-416; Andrew v. State Bank of Dexter, 215 N. W., 742.

The principal is not ordinarily charged with the knowledge of the agent in a matter where the agent's interests are adverse to those of the principal. 3 R. C. L., 479; See also, Wood v. Green, 131 Tenn. (Thompson), 583, 175 S. W., 1139; Provident, etc., Assur. Soc. v. Edmonds, 95 Tenn. (11 Pickle), 53, 31 S. W., 168; 2 C. J., 868; Smith v. Mercantile Bank, 132 Tenn. (5 Thompson), 147, 149, 177 S. W., 72.

The Chancellor in deciding the case did not treat the fact that the agent of the Railroad Company was a director in the bank as seriously affecting the rights of appellant, yet in view of the fact that the question was made in the answer the Railroad Company has cited the above authorities.

Counsel for defendant bank and receiver insists that the funds or money paid by the Railroad Company to the defendant bank and also the $1000 collected by the defendant bank from the bank of Martin on the check of the appellant Brooks, was mixed and mingled with the funds of the bank and counsel relies upon the case of Klepper v. Cox, 97 Tenn., p. 534; and Bragg v. Osborne, 147 Tenn., p. 381; also McDowell v. McDowell, 144 Tenn., p. 457. In the later case the Supreme Court said:

"In each of these cases it was held no trust could be imposed on funds in the hands of the assignee even though a particular

collection was made by the assignor as agent—this because the fund collected had not been kept separate and could not be identified. Akin v. Jones, 93 Tennessee, 353; 27 S. W., 669; 25 L. R. A. 523; 42 Am. State Reports 921; Sayles v. Cox, 95 Tenn., 579, 32 S. W., 626, 32 L. R. A., 715, 49 Am. State Rep., 940; Klepper v. Cox, 97 Tenn., 534, 37 S W., 284, 34 L. R. A. 536, 56 Am. State Reports 823.''

In Bragg v. Osborne, supra, the court said:

"In order to follow trust money there must be specific property capable of being identified into which the trust money has gone. McDowell v. McDowell, supra. The old rule undoubtedly was that since money has no earmarks it could not be followed when a trustee mingled his own with that of his cestui que trust. Our cases rather lead to the conclusion that there has been no relaxation of this rule in Tennessee. Akin v. Jones, 93 Tenn., 353, 27 S. W., 669, 25 L. R. A., 523, 42 Am. St. Rep., 921; Sayles v. Cox, 95 Tenn., 579, 32 S. W., 626, 32 L. R. A., 715, 49 Am. St. Rep., 940; Klepper v. Cox, 97 Tenn. 543, 37 S. W., 284, 34 L. R. A., 536, 56 Am. St. Rep., 823.''

It is the insistence of the appellant that the fund received by the Peoples Bank for which said drafts were issued was a trust fund held by the bank for the appellant. The appellee insists that it was the bank's money after it was received and after the drafts were issued and that the relation of debtor and creditor existed between the bank and the appellant. This position is borne out by the case of Klepper v. Cox, supra, the position of the appellant, is that this case has been overruled by the Supreme Court, in the case of Knaffl v. Knoxville Bank and Trust Company, 130 Tenn., p. 336.

In the case of Bragg v. Osborne, supra, the court in quoting from McDowell v. McDowell, 144 Tenn., 452, 234 S. W., 319, 18 A. L. R., 623, our Supreme Court said:

"The old rule undoubtedly was that, since money has no earmarks, it could not be followed when a trustee mingled his own with that of his cestui que trust. Our cases rather lead to the conclusion that there has been no relaxation of this rule in Tennessee. Arbuckle v. Kirkpatrick, 98 Tenn., 221, 39 S. W., 3, 36 L. R. A., 285, 60 Am. St. Rep., 854; Akin v. Jones, 93 Tenn., 353, 27 S. W., 669, 25 L. R. A., 523, 42 Am. St. Rep., 921; Sayles v. Cox, 95 Tenn., 579, 32 S. W., 626, 32 L. R. A., 715, 49 Am. St. Rep., 940; Klepper v. Cox, 97 Tenn., 543, 37 S. W., 284, 34 L. R. A., 536, 56 Am. St. Rep., 823.

"In McDowell v. McDowell, supra, we declared that this court has never accepted the doctrine that, if one's general estate had been swelled by the proceeds of trust property, the

trust might be established against the general assets, although the estate was insolvent.

"The case of Knatchbull v. Hallett, L. R., 13 Ch. Div., 696, has been rather generally followed in this country, and has been approved by the Supreme Court of the United States in Central National Bank v. Connecticut Mutual Life Ins. Co., 104 U. S., 54, 26 L. Ed., 693. It is the line of authorities following this case that is invoked in behalf of the minor here.

"The doctrine of these cases is that, where a trustee blends in a bank account his own money with a beneficiary's, from which account the trustee subsequently withdraws funds, the withdrawals will be presumed to be the trustee's own funds, which he had a right to withdraw, and the balance will be presumed to include the beneficiary's funds, which the trustee had no right to use.

"To save a trust fund, another fiction was applied by this court in Brocchus v. Morgan, 3 Shan. Cas., 671, and we are not required to say that in a proper case Knatchbull v. Hallett would not now be accepted.

"The case is distinguishable from that of an individual trustee, who mixes the funds of a single cestui que trust with his own account. In such case it can readily be determined whether and to what extent he has appropriated the trust funds to his own use. On the other hand, when a trust company deposits in a common account funds belonging to various persons, it cannot be said that the mere fact of there being on deposit at all times sufficient to meet the claim of any particular customer of the bank entitled that customer to claim it as against other claimants, whose money also went into the same account. Claimant could not trace title to any particular part of the deposits and his claim can therefore rise no higher than the claim of others whose money was deposited in the same general fund." Commonwealth ex rel. Bell v. Tradesmen's Trust Co., 250 Pa., 378, 95 Atl., 577, L. R. A. 1916C, 10.

In the case of Klepper v. Cox, supra, Klepper purchased a draft from the First National Bank of Johnson City for $316.36 on its correspondent bank in Louisville, Kentucky. The bank at Johnson City was hopelessly insolvent when it issued its check on the Louisville bank and this fact was well known to its president and officers and Klepper insisted that this was a fraud perpetrated upon him. When the draft was drawn November 10, 1894, the Johnson City Bank was over-drawn $51.55. When it closed its doors November 12th the Johnson City Bank had a credit with the Louisville Bank, to the amount of $113.65. Our Supreme Court, in Klepper v. Cox, said:

"There are two determining questions arising under the statement of facts. First, whether the proceeds of the check can be traced and identified; and, second, whether the credit was given to the Johnson City bank by the New York bank before the failure of the former. If such credit was entered before the Johnson City bank failed, then the proceeds became mingled with the general funds of the banks, and cannot be reclaimed. Aiken v. Jones, 9 Pick., 353; Sayles v. Cox, 11 Pick., 579. In such case the proceeds cannot be followed, separated, or identified. The credit in this case was given by the New York bank on the same day the Johnson City bank failed; which was first, in point of time, does not appear.

"Under this state of facts, in the absence of proof to the contrary, the identification not being made out, and in favor of the other creditors of the bank seeking a pro-rata distribution of its assets, we must presume that the credit was given before the Johnson City bank failed, and, this being so, the proceeds of the check cannot be identified or separated, and the right to reclaim them is lost, and the decree of the Court of Chancery Appeals is affirmed."

Klepper v. Cox, was approved in Bank v. Osborne, supra. Another interesting case, very similar to the one we have under consideration and especially bearing upon complainant Brook's claim, is the case of State of Tennessee, ex rel. J. L. Emerson, superintendent of banks, v. Bank of Humbolt, decided by the Court of Civil Appeals at Jackson.

In the opinion by Mr. Justice Hall the following authorities were cited:

In Vol. 3 R. C. L., 265, the following rule is announced:

"The general rule is that the title to commercial paper received for collection by a bank and forwarded to its correspondent in the usual course of business does not vest in such correspondent. The relation between the two banks, as between the depositors and the forwarding bank, is that of principal and agent merely. The corresponding bank receive such paper as an agent for collection, and the title does not pass. When, however, the paper has once been collected by the correspondent bank, and it has received the proceeds therefor, the relation between the remitting bank and itself is changed from that of principal and agent to that of debtor and creditor, and title to such proceeds will in the absence of an agreement to the contrary, vest in the correspondent bank. The banks are presumed to contract in view of the well-known and established custom of banks, when acting as collecting agents for other banks, or, indeed for any customer, to put all collections made by them into the general fund of the bank, unless directed to make

of them a special deposit, and use them from hour to hour and from day to day in the transaction of their current business. Such a presumption is not, however, a rule of law which cannot be overcome by an express agreement of the parties to the contrary, and in any event if, before receiving the proceeds of paper sent for collection, the correspondent bank becomes involved, it cannot thereafter obtain title to the proceeds.''

In the case of Akin v. Jones, 93 Tenn., 361-362, our Supreme Court said:

''The general rule on this subject is, that an indorsement for collection vests no title to the paper in the bank, and if the paper passed into the hands of the assignee after insolvency, the owner may recover it specifically, or, if the assignee collects the paper, the owner may recover the proceeds. But if the bank makes the collection before the assignment, it simply becomes an ordinary contract debtor of the owner, and he cannot impress any trust upon the proceeds. Morse on Banking, Vol. 1, Sec. 248. Of course there may be special facts in a case which will take it out of the ordinary rule, and create a trust in the funds collected. Such special facts were found in the case of Continental National Bank v. Weems, 5 Am. St. Rep., p. 85, cited by counsel for defendant. In this case the agreement between the two banks in reference to the proceeds was that 'they should be preserved by said bank as the property of the complainant, and returned to it as such.' The court thought these special facts settled the question of trust in favor of the complainant. But the rule undoubtedly is, that unless there is some agreement or course of dealing whereby the funds are to be held separate and the identical proceeds remitted, the owner of the draft stands upon no higher ground than the other creditors of the bank in a case where the bank collects the draft prior to making a general assignment.''

The holding in Akin v. Jones, supra, was quoted and approved in the case of Sayles v. Cox, 95 Tenn., 583. This rule was announced in Bank v. Davis, 41 A. S. R., 797; 86 A. S. R., 790, note; Bank v. Armstrong, 148 U. S., 50; Marine Bank v. Fulton Bank, 2nd. Wall., 252; Manufacturers National Bank v. Continental Bank, 149 Mass., 553, 12 Am. St. Rep., 598; Peoples v. City National Bank of Rochester, 93 N. Y., 582.

In the Humboldt Bank case the receiver paid the whole of the check which was collected under facts similar to the Brook's check, the receiver believing that the bank held the collections in trust, creditors excepted to receiver's report the Chancellor held against the receiver, and his decree was affirmed by the Court of Civil Appeals.

Mr. Justice Hall among other things said:

"There is, in our opinion, nothing in the facts of the case at bar to take it out of the general rule. There was no agreement between the forwarding bank and the collecting bank that said collection should become, when collected, a special deposit. Thé forwarding bank was presumed to know the well-established custom of banks, when acting as collecting agents for other banks, to put all collections made by them into their general funds, and no doubt the forwarding bank in the case at bar contracted with the Bank of Humboldt with this well-established custom in view, and expected to make said collections and remit the same to it in the usual way."

The fact that the draft was accompanied by a letter from the forwarding bank to the collecting bank, containing the following direction or advice: "We enclose for collection and return when paid," does not take the collection out of the general rule. We think the presumption is that the forwarding bank expected the collecting bank to make said collection according to the general custom and remit it in the usual way by exchange, because the draft on its face shows that it was drawn for $1140 "with exchange." The fact that the draft was accompanied by a letter of instruction. "We enclose for collection and return when paid," can make no difference. Howard & Co., v. Walker, 92 Tenn., 455.

But it is insisted that the proceeds of said draft were never charged by the collecting bank to the account of the drawee, Humboldt Milling Company, and, therefore, said proceeds never became commingled with the general funds of the bank, the stipulation of fact showing that the check given by the Humboldt Milling Company in payment of said draft was found by the receiver among the papers of the bank after its suspension. It is not shown why the collection was not charged to the account of the Humboldt Milling Company by the collecting bank, but there is no fact in the record tending to show that the Bank of Humboldt intended to keep said collection separate from its other funds. There was certainly no agreement between the two banks that it should be done, nor was there any difference from the forwarding bank to the collecting bank that this should be done. As before stated, we think the facts indisputably show that the forwarding bank expected the Bank of Humboldt to make the collection in the usual way, and remit said collection in the way that such collections are usually remitted; that is, by exchange, cashier's check, or check on some other bank.

We are of the opinion that the fact that the check drawn by the Humboldt Milling Company in favor of the Bank of Humboldt in payment of said draft was not charged to the account of the Humboldt Milling Company on the books of the bank before it suspended, can make no material difference. The Bank of Humboldt accepted

the check from the Humboldt Milling Company in payment of the draft, and by doing so became liable to the forwarding bank for said collection. The charging of the check given by the Humboldt Milling Company in payment of said draft to its account was a mere matter of book-keeping, and its failure to charge said check to the account of the Humboldt Milling Company in no way affected or changed the legal rights of the parties. This failure upon the part of the Bank of Humboldt was, in all probability, due to its neglect.

We are of the opinion that the question involved is settled by our own cases, and further elaboration is unnecessary.

It is earnestly insisted that this opinion of Justice Hall's was delivered by a divided court, that is true but the majority of the court concurred in Judge Hall's opinion.

Learned counsel for appellants insist that Klepper v. Cox, supra, was silently overruled, in the case of Knaffl v. Knoxville Bank and Trust Company, 130 Tenn., p. 336. In the Knaffl case the court held that where a depositor had the makers of checks stop payment of them after they had been deposited in an insolvent bank and had been paid to a correspondent bank, and whereby a subsequent agreement saving the rights of the parties, the checks were collected, their proceeds were held by the receiver in trust, for the defrauded depositor. The court said:

"In the pending case there is no difficulty in respect to the tracing of the deposited items; the identical checks came into the hands of the receiver after insolvency, thus it will be seen that the depositor's checks were easily identified and the checks were not mixed and mingled with the bank's funds." By a stipulation of counsel it is shown that:

The Peoples Bank, Martin, Tennessee, at the close of business on the dates below mentioned had on hand in its place of business at Martin, Tennessee, the following amounts of cash and cash items:

September 15, 1927:
Actual cash consisting of money ...........$ 9,611.99
Total Cash and Cash Items ................. 10,884.81
September 16, 1927:
Cash .................................... 9,830.09
Total Cash and Cash Items ................. 11,701.54
September 17, 1927:
Cash .................................... 9,180.35
Total Cash and Cash Items ................. 11,146.91
September 19, 1927:
Cash .................................... 9,552.25
Total Cash and Cash Items ................. 11,482.62

September 20, 1927:

    Cash ...............................$ 9,972.26

    Total Cash and Cash Items ................... 11,501.94

September 21, 1927:

    Cash ..................................... 9,628.79

    Total Cash and Cash Items ................. 11,068.22

On the dates below mentioned the Peoples Bank received deposits and collections as follows:

September 15, 1927:

    Deposits ...................................$1417.28

    Collections ...................................... 10.00

September 16, 1927:

    Deposits ................................... 5914.74

    Collections .................................. 40.00

September 17, 1927:

    Deposits ................................... 6286.88

    Collections .................................. 56.65

September 19, 1927:

    Deposits ................................... 3017.73

    Collections .................................. 972.78

September 20, 1927:

    Deposits ................................... 1461.23

    Collections .................................. 21.00

September 21, 1927:

    Deposits ................................... 4282.85

    Collections .................................. 10.00

The disbursements on the Peoples Bank were as follows:

September 15, 1927 ..........................$ 6,917.31

September 16, 1927 .......................... 5,350.44

September 17, 1927 .......................... 11,984.29

September 19, 1927 .......................... 4,252.39

September 20, 1927 .......................... 5,878.81

September 21, 1927 .......................... 4,963.66

There is no way of identifying the proceeds of the Brook's check or the cash that the railroad agent paid to the bank for the drafts he purchased. We are not unmindful that the courts of a number of states, under facts similar to the instant case, allow the creditor a preference but under the Tennessee authorities, as we understand the same, we are of the opinion that the complainants in the two cases before us are not entitled to a preference. It results that there is no error in the decrees of the Chancellor, all assignments in both cases are overruled and disallowed, the decrees of the lower court

are affirmed. The appellants will pay the costs of the cause including the costs of the appeal for which execution will issue.

Heiskell and Senter, JJ., concur.