ROBERTSON v. RAMSEY et al.—66 S. W. (2d) 1022.

Middle Section. May 27, 1933.

Petition for Certiorari denied by Supreme Court, January 13, 1934.

R. E. Lee, of Pulaski, for receiver.
Bennett Eslick, J. L. Jones, M. S. Kennedy, Jr., R. E. Dotson,

250

D. R. Wade, Jr., and David Rhea, all of Pulaski, and T. H. Helton, of Lawrenceburg, for G. W. Howard and J. M. Davenport.

FAW, P. J.   The questions for decision in this case have been brought to this court by two appeals—one by G. W. Howard and one by D. D. Robertson, receiver of the Citizens' Bank of Pulaski, Tennessee.

By intervening petition and cross-bill in the chancery court of Giles county, G. W. Howard sought to recover from D. D. Robertson, receiver of the Citizens' Bank of Pulaski, certain 4¼ per cent Fourth Liberty Loan United States bonds, of the par value of $1,050, deposited by said Howard in the Citizens' Bank, or, in the alternative, to obtain a decree for preferential payment of the value of said bonds out of the assets of said bank in the hands of its receiver.   The chancellor denied the relief thus sought by Howard, but decreed that Howard is a general creditor of the Citizens' Bank for the market value of the bonds deposited by him, and referred the cause to the master to determine the market value of said bonds on June 29, 1931 (the day on which said bank was adjudged insolvent) : whereupon Howard appealed to this court.

J. M. Davenport, by intervening petition and cross-bill, sought to recover from D. D. Robertson, receiver, etc., certain municipal bonds, viz.: Dyer, Tennessee, 5½ per cent Sewer bonds, of the par value of $1 000, deposited by said Davenport in the Citizens' Bank, or, in the alternative, to obtain a decree for preferential payment of the value of said bonds out of the assets of said bank in the hands of its receiver.   The chancellor found that said Davenport deposited one Dyer, Tennessee, Sewer bond, Serial No. 39. of the par value of $500, in the Citizens' Bank, on October 4, 1926, and another Dyer, Tennessee. Sewer bond, Serial No. 40, in the Citizens' Bank on January 5, 1929, and that said two bonds are now in the possession of D. D. Robertson as receiver of said Citizens' Bank. The chancellor adjudged that the deposit of said bonds by Davenport in said bank was in the nature of a bailment, and no title thereto passed to the bank; that, with respect to said bonds thus deposited by Davenport, the receiver stands on no higher ground than the bank, and that petitioner Davenport is entitled to the possession of his said bonds.   It was thereupon decreed that the receiver deliver to J. M. Davenport said Dyer, Tennessee, Sewer bonds, numbered 39 and 40, as aforesaid.   From the decree thus rendered in favor of J. M. Davenport. the receiver appealed to this court.

The main matters of controversy in the case are indicated by the foregoing statement.   There were incidental rulings by the chancellor, with respect to the competency of evidence and the adjudication of costs, to which exceptions were reserved below and which are the subject of assignments of error in this court.

The facts which gave rise to this litigation and the history of the case in the court below, so far as deemed material to the issues before this court, will now be stated.

The Citizens' Bank, a banking corporation chartered and organized under the laws of the state of Tennessee with its principal banking house and place of business in the town of Pulaski, Tennessee, closed its doors and suspended business on June 26, 1931, and on June 29, 1931, D. D. Robertson, superintendent of banks of the state of Tennessee, was appointed receiver of said bank by the chancery court of Giles county, pursuant to the provisions of chapter 20 of the Public Acts of the General Assembly of Tennessee for the year of 1913 as amended, known as the Banking Act of Tennessee, and immediately went into possession of all the assets and property of said bank as its receiver, and has been since that time actively engaged in administering said trust.

The present litigation was instituted by a bill filed in the chancery court of Giles county on July 22, 1931, by said D. D. Robertson, receiver as aforesaid, against John H. Ramsey and E. W. White, both citizens of Giles county, Tennessee, in which bill it was alleged, among other things, that for many years customers of said bank, including defendants Ramsey and White, have been making deposits of bonds therein and receiving therefor certificates of deposit in a form set out in the bill and also shown by originals exhibited with the bill; that said depositors, including defendants Ramsey and White, are asserting ownership of the bonds deposited by them, respectively, and claiming the right to recover said bonds, or preferential payment therefor out of the assets of the bank in the hands of its receiver; that complainant, as such receiver, has refused, and is refusing, to deliver to defendants Robertson and White and other such depositors the bonds they are claiming, and is also refusing to recognize their claim to preferential payment therefor, but recognized their right to be treated as general creditors of the Citizens' Bank, as said bank is insolvent and is being liquidated under the banking laws of the state of Tennessee which require the distribution of the net assets of said bank among all its creditors ratably and without preference.

It is stated in the bill that complainant, the receiver, files same for an interpretation and legal construction of said certificates of deposit of bonds, and for instructions with reference to the disposition of said bonds claimed by defendants Ramsey and White.

Complainant also alleges that "all other depositors of bonds should be permitted to intervene in this cause by petition and assert their rights and have their claims to said bonds adjudicated in this cause."

After the usual prayer for process and waiver of answer under oath as to defendants Ramsey and White, complainant receiver prayed that publication be made for four weeks in the local news-

papers published in Pulaski, Tennessee, and circulated throughout Giles county, for all depositors of bonds in the Citizens' Bank to file their petitions in this cause, should they so desire, for a construction of certificates of deposit held by them, and that such depositors of bonds be permitted to make such claims against the receiver with respect to said bonds as they may feel that they are entitled to; that the court construe said certificates of deposit exhibited to the bill in this cause, and such other certificates of deposit as may properly be presented by petition, and let the court determine the rights of complainants and defendants and said petitioners in and to the respective bonds now held in the assets of the Citizens' Bank as shown by the inventory filed in the chancery court of Giles county in the cause wherein complainant was appointed receiver; that the court finally decree that the defendants and all other depositors of bonds who may intervene in the cause by petition stand on no higher ground than other depositors of said bank or other general creditors, but are entitled to participate as general creditors in a division of the assets of the Citizens' Bank; that, in the alternative should the court be of the opinion that said certificates of deposit should be construed as safe-keeping receipts, then and in that event, that the court make such orders and decrees with respect to the delivery of said bonds to the respective depositors thereof as will fully protect complainant as such receiver of said insolvent bank; and that, on final hearing of the cause, complainant, and all parties to the suit and those who may intervene by petition, may have such other, further, and general relief as to the court may seem right and proper.

In accordance with a decretal order, made by the chancellor pursuant to the foregoing prayer of the bill, the clerk and master published a notice in the newspapers published in Pulaski and Giles county, notifying all depositors of bonds in the Citizens' Bank of Pulaski now in liquidation, that they might intervene in this cause, by petition, and assert their claims and rights to bonds deposited by them, if any, on or before September 28, 1931, should they so desire.

By a subsequent order of the court, the time "within which claims and suits may be brought in this cause" was extended to January 15, 1932, and publication of such extension of time was made in the newspapers published in Giles county.

Pursuant to the leave thus granted, intervening petitions were filed by more than thirty petitioners claiming the right to recover bonds which, according to the allegations of their petitions, they had deposited in the Citizens' Bank for safekeeping.

On March 28, 1932, a decree was entered reciting that the cause was heard before the chancellor upon the original bill and the petitions and cross-bills of defendant E. W. White and eight other per-

sons who had intervened in the cause by petition (naming them), and upon the entire record; that it duly appears to the court from the record and from statements of counsel made in open court, that the above-named parties, prior to June 26, 1931, had deposited in the Citizens' Bank, first mortgage real estate bonds or notes of the Citizens' Bond & Investment Company, and had respectively accepted from said bank as evidence of such deposits the receipts or certificates of deposit exhibited in the record; that from said respective receipts or certificates of deposit it duly appears to the court that it was the intention of said bank at the time of accepting said bonds on deposit to return and deliver to each of said depositors the identical bonds mentioned and described in their respective certificates of deposit; that this is true because said receipt or certificate of deposit specifically described said Citizens' Bond & Investment Company's bonds by number.

It is further recited in said decree that the court is of the opinion that said receipts or certificates of deposit upon their face sufficiently identify said Citizens' Bond & Investment Company's bonds left on deposit with the said bank; that it further appears to the court that each and all of the bonds of the above-named parties are now on hand and in the possession of the receiver of said bank and that the same can be delivered.

The bonds of each of the owners thereof were then described in the decree, and the clerk and master was directed to deliver same to the parties thus adjudged to be entitled thereto, or their attorneys of record, upon the surrender and cancellation of the respective receipts or certificates of deposit.

All of said intervening defendants who had filed cross-bills in the cause were taxed, respectively, with the cost incident to the filing of such cross-bills.

All other matters involved in the cause were expressly reserved for future adjudication by the court.

There was no exception to the foregoing decree and no appeal therefrom.

The record in this court contains an ''abstract'' of thirty-one petitions and cross-bills filed in this cause by as many bond depositors, claiming the return of their bonds in specie or claiming a preference therefor out of the assets of the Citizens' Bank. This ''abstract'' was filed on April 5, 1932, by agreement between counsel representing all of the parties, which agreement was that: ''This abstract of said petitions and cross-bills may be filed and used on the hearing of this cause, and in case of appeal the same may be copied into the transcript in lieu and instead of the original petitions and cross-bills. All petitions and cross-bills were answered by D. D. Robertson, receiver of the Citizens' Bank.''

But, so far as appears from the record before us, there was no

adjudication below with respect to the claims of any of the thirty-one petitioners and cross-complainants, except those of appellant G. W. Howard and appellee J. M. Davenport; so that our consideration of this case is necessarily confined to the issues arising with respect to these two claims, which require separate consideration.

We will first consider the claim of G. W. Howard:

On August 28, 1931, G. W. Howard intervened in this cause by petition and filed his petition as a cross-bill against the Citizens' Bank, D. D. Robertson, superintendent of banks and receiver of said Citizens' Bank, and Joe L. Hutton, liquidating agent of said Citizens' Bank, and petitioner Howard alleged that on April 13, 1926, he was the owner of certain bonds in the amount of $1,050, the same being 4¼ per cent Fourth Liberty Loan bonds, and that he deposited said bonds or left said bonds in said bank for safe-keeping and as specific bonds to be redelivered to him upon demand and upon presentation of his receipt, it being the agreement had with said bank, through its president, W. L. Abernathy, Jr., that said bonds were left with said bank for safe-keeping only, and said bank agreed and promised to redeliver the said bonds to petitioner upon the surrender of said receipt or said certificate of deposit which was issued to him on said date, and in accordance with which agreement for the safe-keeping of said bonds said bank, through its president as aforesaid, issued to petitioner a certain receipt or certificate of deposit No. 508, which said receipt is as follows:

"The Citizens' Bank                                                    $1050.00
"No. 508    Pulaski, Tenn.    April 13, 1926.

"G. W. Howard, has deposited in this Bank, the sum of One Thousand and Fifty Dollars in United States 4th 4¼% Liberty Loan bonds, which will be delivered on the return of this certificate properly endorsed. Interest on bonds from April, 1926, will be collected and credited to account of depositor.
"Int. periods, April & Oct.

                                        "W. L. Abernathy, Jr., Pres."

The original receipt or certificate of deposit is filed as an exhibit to the petition and shows the words, "Not Negotiable," printed, in red ink, transversely across the face thereof, and also the printed words, "Certificate of Deposit of U. S. Bonds" superimposed, in large red letters, upon the printed and typewritten provisions of the instrument.

Petitioner Howard further alleges that he has called upon said bank and its receiver, D. D. Robertson, and its liquidating agent, Joe L. Hutton, and has demanded the return and delivery to him of the said United States Fourth Liberty Loan bonds called for in the foregoing receipt or certificate of deposit, and that same can be identified by said receipt, but that the said cross-defendants have

positively and absolutely and arbitrarily refused to deliver said bonds to petitioner.

The petition and cross-bill of G. W. Howard contains many other allegations, but we think it sufficient for present purposes to say that it contains allegations and prayers which afford a predicate in pleading for all the claims and contentions made through its assignments of error which will be later discussed herein.

The receiver, D. D. Robertson, and the liquidating agent, Joe L. Hutton, answered G. W. Howard's cross-bill on January 9, 1932, and admitted that said Howard holds the certificate of deposit mentioned and described in his cross-bill; that said Howard had demanded the return of said bonds, which are United States Government bonds known as Fourth Liberty Loan 4¼ per cent bonds, as described in his certificate of deposit.

But said cross-defendants alleged in their answer that there are many thousands of government bonds designated and described as Fourth Liberty Loan 4¼ per cent bonds, and that it is impossible for said G. W. Howard or any one else to identify the bonds mentioned and described in his certificate of deposit.

Cross-defendants denied that the certificate of deposit held by G. W. Howard is a safe-keeping receipt, and alleged that said bonds were left with said bank as alleged in the original bill in this cause.

The chancellor's decree with respect to the claim of G. W. Howard and his findings embraced therein are as follows:

"This cause came on this the 28th day of April, 1932, to be further and finally heard before the Hon. Thos. B. Lytle, Chancellor, upon the original bill of the complainant, D. D. Robertson, Receiver of the Citizens' Bank, and upon the petition and cross-bill of G. W. Howard filed in this cause on August 28, 1931, and upon all of the exhibits and agreements and proof on file, and upon argument of counsel, from all of which it duly appears to the Court as follows:

"That the petitioner and cross-complainant G. W. Howard did on April 13, 1926, deposit in The Citizens' Bank of Pulaski, Tennessee, $1050 worth of U. S. Fourth Liberty Loan 4¼% bonds and accepted from said bank and bank's certificate of deposit No. 508.

"It further appears to the Court from the entire record that said Howard has never received from the bank since depositing said bonds these said bonds deposited or equivalent bonds, nor has he received therefrom the value of said bonds in money, and it further appears to the Court that said bank is now insolvent, and was so adjudged on June 29, 1931, in the cause of State of Tennessee ex rel. D. D. Robertson v. The Citizens' Bank, Rule No. 8779, in this Court.

"It further appears to the Court that The Citizens' Bank kept no record of the serial numbers of the bonds deposited by said G. W. Howard, and that said Howard kept no record of the same,

and that there is now no way to identify these specific bonds by him deposited.

"It further appears to the Court that various other persons together with said Howard, prior to the insolvency of said bank, had deposited therein at the time it closed, $31,100 worth of Fourth Liberty Loan bonds, and that the bank also owned $550 worth of U. S. Fourth Liberty Loan bonds bearing interest at $4\frac{1}{4}\%$ at the time it became insolvent, and that said bonds deposited by said Howard and others were mixed and mingled with bonds belonging to the bank without an undertaking on the part of the bank to keep separate the bonds deposited by said parties and the bonds owned by the said bank.

"It further appears to the Court that said bank had on deposit at the time of its insolvency and due its customers for other government bonds deposited $9,000 worth of U. S. Treasury certificates bearing interest at the rate of $4\frac{1}{4}\%$ and $150 worth of U. S. First Liberty Loan bonds bearing interest at $3\frac{1}{2}\%$, all of which were handled by the bank in the same manner as said Fourth Liberty Loan bonds and no record of their identity kept.

"It further appears to the Court that most of said bonds were used by said bank as collateral in correspondent banks, which bonds so used as such collateral were in the main sold by said correspondent banks and applied to bills payable of the Citizens' Bank due said correspondent banks, and that said Receiver now has on hand $11,500 worth of U. S. Fourth Liberty Loan bonds bearing interest at the rate of $4\frac{1}{4}\%$ and $150 worth of First Liberty Loan bonds bearing interest at $3\frac{1}{2}\%$ none of which bonds can be identified as the bonds deposited by said G. W. Howard and others.

"It further appears to the Court that the cash reserve of said Citizens' Bank as required by law was wholly insufficient on the date it was adjudged to be insolvent to pay said G. W. Howard and others, the value of their bonds deposited.

"It further appears to the Court that it cannot now be ascertained whether any of the Fourth Liberty Loan bonds in the possession of said Receiver of said Citizens' Bank are the bonds deposited by said G. W. Howard and it is so adjudged and decreed, and said Howard is not entitled to have said $11,500 worth of 4th L. L. Bonds now in the hands of said Receiver sold and pro rated among claimants of 4th L. L. Bonds.

"It is therefore ordered, adjudged and decreed by the Court that all of said government bonds now in the hands of the Receiver and claimed by said G. W. Howard be, and the same are hereby decreed to belong to said Citizens' Bank and constitute a part of said bank's assets in the hands of said Receiver for liquidation.

"It is further ordered, adjudged and decreed by the Court that said G. W. Howard be and he is hereby declared to be a general

creditor of said Citizens' Bank for the market value of said bonds deposited by him; and this cause is referred to the Clerk & Master to take proof and determine the market value of the bonds deposited by said Howard as of June 29, 1931, the day on which said bank was adjudged insolvent, and said Howard is hereby decreed to be a general creditor of said Citizens' Bank in the amount and to the extent of the value of said bonds as of said date;

"The Court is of the opinion that said Howard is not entitled to be adjudged a preferred creditor for the reason that he cannot trace his property or the proceeds thereof and no claim therefor can be established against the general assets of said bank in the hands of the Receiver.

"Upon the application of the complainant, D. D. Robertson, Receiver, said petitioner and cross-complainant, G. W. Howard is taxed with all the costs incident to the filing of said cross-bill together with the costs of the proof and stipulation of facts relative to the U. S. Fourth 4¼% Liberty Loan bonds. This cost will, however, be shared by other petitioners and cross-complainants seeking the recovery of government bonds in this cause, or seeking to be adjudged preferred creditors in this cause."

Through fourteen assignments of error appellant Howard asserts that the foregoing decree of the chancellor, denying him the relief sought by his petition and cross-bill, was, and is erroneous, for reasons stated, which we think may be fairly summarized as follows:

1. The deposit of the bonds was special (for safe-keeping only), and not a general deposit, and the relationship created between appellant Howard and the bank was that of bailor and bailee, or cestui que trust and trustee, and not that of creditor and debtor; for

(a) The proof, including the stipulated facts, so shows:

(b) The "certificate of deposit" is "a receipt pure and simple, or a memorandum," but, if it should be he'd to be a contract, "the evidence offered does not alter, contradict or vary its terms;"

(c) The "cash reserve" of the Citizens' Bank, required by law, was sufficient, on the day said bank was adjudged to be insolvent to pay G. W. Howard and others the value of their bonds deposited and said bonds, or their proceeds, were sufficiently traced into, and identified in, the hands of cross-defendant D. D. Robertson, receiver.

Appellant Howard also complains, through one of his assignments of error, that the chancellor erred in taxing any part of the cost against him and other claimants of said bonds.

In reply, it is said on behalf of the receiver that appellant Howard's assignments of error should all be overruled; for—

(a) The "certificate of deposit" issued by the Citizens' Bank to appellant Howard at the time the bonds in question were deposited constitutes the entire contract between the parties, and is complete on its face, and must be construed without regard to parol or ex-

traneous evidence; that the contract evidenced by said certificate of deposit is unambiguous and therefore cannot be changed, in words or in legal effect, by parol evidence, but, if said written contract is ambiguous at all, the ambiguity is patent on the face of the certificate, and parol evidence is not admissible to explain a patent ambiguity;

(b) The contract evidenced by said certificate of deposit created the relation of debtor and creditor between the Citizens' Bank and appellant Howard, and the decree of the chancellor adjudging that appellant Howard is a general creditor of the Citizens' Bank, for the market value of said bonds deposited by him, was proper.

The record facts for consideration with respect to the claim of appellant Howard appear mainly from a written statement of agreed facts—styled "Stipulations as to 4¼% Liberty Loan bonds"—signed by counsel for all the parties and filed in the case, and from the depositions of G. W. Howard and Carson F. Vaughan.

The concluding paragraph of said stipulation is as follows:

"We, the undersigned, agree as to the above stated facts, and we agree that this agreement may be filed and read as evidence in said cause above styled, and under any petition filed by the claimants or depositors of 4¼% Fourth Liberty Loan bonds, or of any other petition filed in this cause claiming bonds, the right reserved to all parties to file such exceptions as they may desire."

The reservation by "all parties", to the above agreement of the right "to file such exceptions as they may desire" seems to have been understood by counsel as a reservation of the right to except to the competency and/or relevancy of all or any of the facts thus stipulated, as evidence in this case, and it was doubtless so intended.

The receiver, through his counsel, filed numerous exceptions to the aforesaid "stipulations as to 4¼% Liberty Loan bonds," and also excepted to the entire evidence in chief of G. W. Howard on the ground that "the same is an effort to alter, change, vary and contradict the terms of a valid written instrument, to-wit: the certificate of deposit No. 508 issued by the Citizens' Bank to G. W. Howard: and is further an effort to supply the identity of the bonds deposited with the Citizens Bank by said Howard in violation of said certificate of deposit, said certificate of deposit being the written contract entered into between the parties and being unambiguous, said parol testimony is incompetent, immaterial and irrelevant, and cannot be relied upon to alter, change or vary the terms thereof or to supply a description of said bonds, or to alter, change or vary the legal import of said written contract."

But the foregoing exceptions on behalf of the receiver were overruled by the chancellor on final hearing, to which action of the chancellor the receiver reserved exceptions, but did not appeal therefrom, and has not assigned errors upon the ruling of the chan-

cellor with respect to his exceptions to the "stipulations as to 4¼% Liberty Loan bonds" and/or deposition of G. W. Howard.

The receiver is the appellee as to the claim of appellant Howard, and, although, under some circumstances in equity cases, an appellee may assign errors (Pigg v. Houston & Liggett, 8 Tenn. App., 613), matters not contained in assignment of errors by appellee are not rendered reviewable by general discussion or even particular objection made later in the general argument accompanying the assignment of errors. Taylor v. Elgin, 140 Tenn., 602, 610, 617, 622, 205 S. W., 428. Therefore, in reviewing the chancellor's decree with respect to the claim of appellant Howard, there is no occasion to discuss the competency and relevancy of evidence admitted by the chancellor, although incidental references to that subject may be made when we come to consider the proper interpretation and construction of the certificate of deposit, No. 508, held by appellant Howard.

Certain assignments of error filed on behalf of the receiver under his appeal from the chancellor's decree in favor of appellee Davenport purport to challenge the competency of Davenport's testimony and of a certain "Stipulation of facts as to Dyer, Tennessee, bonds," but these assignments make no reference to the testimony of G. W. Howard and/or the stipulations as to United States Liberty Loan bonds involved in the claim of appellant Howard, and will not be considered until we come to review the chancellor's decree on Davenport's claim.

G. W. Howard (appellant) testified that on April 13, 1926, he left with the Citizens' Bank at Pulaski some United States 4¼ per cent Liberty Loan bonds amounting in all to the par value of $1,050; that prior to that date he had bought these bonds from the Prospect Bank at Prospect and had kept them in a "tin box" in the vault of the Prospect Bank until he carried them to the Citizens' Bank on April 13, 1926; that he was the owner of said bonds at the time he turned them over to the Citizens' Bank; that the transaction was handled for the Citizens' Bank by W. L. Abernathy, Jr., its president, who told witness that the bonds would be there subject to his (Howard's) order at any time he would choose to get them; that witness left the bonds at the Citizens' Bank for safe-keeping, and had no other purpose in leaving them there; that he (Howard) never agreed or consented for the Citizens' Bank to place his bonds in its assets and carry them as its own property, or to use them as collateral or to pledge them for its debts, and that he had no knowledge that they were doing these things until after the bank had closed; that on each interest-paying date the Citizens' Bank credited the amount of the interest accruing on said bonds on his (Howard's) savings account.

Mr. Howard testified further that Mr. Abernathy gave him a

"receipt" for said bonds at the time they were left at the Citizens' Bank as above stated; and he (Howard) identified the "certificate of deposit" No. 508, filed as an exhibit to his petition and cross-bill (which is copied on pages 7 and 8, of this opinion [66 S. W. (2d) 1025]), as the "receipt" delivered to him by Mr. Abernathy, president of the Citizens' Bank, at that time.

Mr. Howard also testified that said bonds were, at the time he left them with the Citizens' Bank, worth more than the par value of $1,050 stated in the "receipt," and that on previous occasions he had deposited bonds in the Citizens' Bank under similar terms and conditions, which last-mentioned bonds had been redelivered to him, on his demand, as his property.

On cross-examination, Mr. Howard testified that he had the "paper No. 508" (the certificate of deposit) in his possession from the time it was issued until the bank closed; that he knew Liberty Loan bonds were numbered just like he knew that "a greenback bill is numbered;" that a $1,000 Fourth Liberty Loan bond that he owned was just like a Fourth Liberty Loan bond that anybody else owned, "with the exception of the number;" that he did not know the denominations of the bonds he deposited in the Citizens' Bank on April 13, 1926, and would not know his bonds now if he were to see them; that he was a stockholder of the Citizens' Bank, and received a printed statement of its condition about twice a year, along with his dividend check, and also noticed published statements of the Citizens' Bank in the Pulaski newspapers; that he noticed in said statements that the bank carried some bonds, but he "didn't fully understand those statements." Mr. Howard also testified on cross-examination as follows:

"Q. You used to keep these bonds in your lock box inside the vault of the Bank at Prospect, didn't you? A. Yes, sir.

"Q. How did you happen to take them out of your lock box at Prospect, and deposit them in the Citizens' Bank at Pulaski? A. Well we had a fire down there once and those boxes were all taken out of the vault and scattered on the street; so I brought them up here for safe-keeping because if the crowd that was there had known they were valuable, they would have been easy to have gotten into and got them away from there; so I brought them up here for safe-keeping. . . .

"Q. Mr. Howard you had a lock box at the Citizens' Bank inside the main vault, didn't you? A. Yes, sir.

"Q. And there is a big heavy outside vault door with a time lock? A. Yes, sir.

"Q. It is about the best in any country town isn't it, Mr. Howard? A. The best I ever did see; I haven't been in these Cities though.

"Q. Why didn't you put your bonds inside your private lock box

inside the Citizens' Bank? A. Well for two reasons; one was that I felt like it would be easier to get into those boxes than it would into that money safe, and that is where I thought Mr. Abernathy kept those things; and another reason was, to leave the bonds up here, whenever the interest coupons had to be clipped, Mr. Abernathy or some one of the Bank would attend to that and send me a duplicate and I wouldn't have to be bothered.

"Q. Did you know the Bank carried insurance against burglary and robbery to protect its money, bonds and other securities? A. Not for any individual box I didn't think so—private box of an individual; you all understand what I mean.

"Q. You did know that if—or think or believe that if your bonds should be lost by robbery or burglary the Bank would be responsible to you, didn't you? A. I didn't know about that Mr. Lee; I left them with the Bank as I said, thinking it would be more safe put in there—less chance of losing them.

"Q. Mr. Howard I'll ask you if this isn't true; that you regarded that what papers and securities you put in your private lock box in the vault were there at your risk; and the bonds you deposited at the Citizens' Bank carried in the safe as you say under a time lock, were there, at the Bank's risk; didn't you so understand the contract? A. No I couldn't say about that Mr. Lee; I considered as an individual that I was safer, leaving them in Mr. Abernathy's care; I had the greatest confidence in him; they would be safer in this money safe—where you lock up your money. I had the utmost confidence in Mr. Abernathy.

"Q. The Bank didn't charge you anything for keeping the bonds did they? A. Not that I know of.

"Q. Nor did the Bank charge you any rent on your box? A. Not that I know of."

On redirect examination, Mr. Howard testified further as follows:

"Q. Mr. Lee has asked you about the Bank statement and the bonds deposited as carried in that statement; did you understand that that included your bonds, and other bonds, left with the Bank for safe-keeping. A. I thought it was the Bank's bonds; Bank's property.

"Q. And you did not understand that that included your bonds and the bonds of other persons in similar situation? A. I did not.

"Q. Now Mr. Howard did you have any understanding with the Citizens' Bank whereby you were permitted to check and draw against the bonds you had left there? A. I did not."

The aforementioned agreed statement of facts, known in the record as the "Stipulations as to 4¼% 4th Liberty Loan bonds," covers twenty typewritten pages of the transcript and has exhibited therewith a copy of four large ruled sheets from the bond register of the Citizens' Bank. It would unnecessarily extend this opinion to

set forth herein all of said "Stipulations," but certain facts thereby disclosed will now be stated.

At the time the Citizens' Bank closed its doors on June 26, 1931, and when the receiver was appointed on June 29, 1931, the bank had in its possession, in the vault of its banking house at Pulaski, $2,950 of 4¼ per cent Fourth Liberty Loan bonds, and had on deposit for safe-keeping in the American National Bank at Nashville, Tennessee, $7,000 of 4¼ per cent Fourth Liberty Loan bonds which were subsequently delivered by the American National Bank to the receiver.

(Unless otherwise indicated, all references herein to the amount or worth or value of bonds are to the face or par value.)

$2,000 of 4¼ per cent Fourth Liberty Loan bonds had been deposited in the United States Treasury by the Citizens' Bank, prior to its insolvency, to secure postal savings deposits, which bonds were redeemed by and returned to the receiver; the claim of the United States being a preferred claim.

The above-mentioned bonds, aggregating $11,950, are all of the 4¼ per cent Fourth Liberty Loan bonds that have gone into the possession of the receiver of the Citizens' Bank.

Prior to its insolvency and the appointment of the receiver, the Citizens' Bank had pledged $10,000 of 4¼ per cent Fourth Liberty Loan bonds (along with other collaterals) to secure debts owing by it to the Chase National Bank of New York.

The aforesaid indebtedness of the Citizens' Bank to the Chase National Bank was evidenced by four notes aggregating $27,000 (less a credit on June 2, 1931, for $6,000), executed by the Citizens' Bank to the Chase National Bank for loans made by the Chase National Bank to the Citizens' Bank. The proceeds of said loans were credited to the account of the Citizens' Bank in the Chase National Bank, and drafts were, from time to time, drawn against said credit by the Citizens' Bank, and some previous bills payable to the Chase National Bank were charged against it. No part of the proceeds of said loans "can be traced into any particular security, property, paper, or assets, the same having remained on deposit at the Chase National Bank and used as aforesaid."

The $10,000 of 4¼ per cent Fourth Liberty Loan bonds pledged to the Chase National Bank as aforesaid were sold by the Chase National Bank on July 27, 1931, for the sum of $10,771.23, and the proceeds were applied by said bank to the payment of the said debts of the Citizens' Bank, and no part of said bonds or their proceeds were returned to the receiver.

Prior to its suspension and the appointment of the receiver, the Citizens' Bank had pledged $9,700 of 4¼ per cent Fourth Liberty Loan bonds (along with other collaterals) to secure debts owing by it evidenced by notes to the Citizens' Union National Bank of

Louisville, Kentucky. The additional collaterals consisted of $500 of United States 3½ per cent First Liberty Loan bonds and $500 of United States 4¼ per cent United States Treasury certificates. At the time the Citizens' Bank closed its doors, its debts thus owing to the Citizens' Union National Bank aggregated $9,985.41. On June 30, 1931, the Citizens' Union National Bank sold all of the aforesaid collaterals pledged to it by the Citizens' Bank. The $9,700 of 4¼ per cent Fourth Liberty Loan bonds sold for $10,-228.25, and the remaining $1,000 of collaterals brought $1,082.21, making the full sum of $11,310.46 as the proceeds of the sale of all the collaterals held by the Citizens' Union National Bank; and, after satisfying its claim of $9,985.41 against the Citizens' Bank, the Citizens' Union National Bank paid over the balance of the proceeds of said collaterals, viz., $1,325.05, to the receiver of the Citizens' Bank on July 7, 1931.

The aforesaid notes of the Citizens' Bank to the Citizens' Union National Bank were executed for money loaned by said Citizens' Union National Bank to the Citizens' Bank and placed to the credit of the Citizens' Bank in the Citizens' Union National Bank, against which account drafts were drawn from time to time by the Citizens' Bank and previous bills payable to the Citizens' Union National Bank were charged, and the funds thus procured were used in due course of business transactions by the Citizens' Bank, and "no part of said funds, or the proceeds of said loan evidenced by said note or notes, can be traced into any particular security, property, paper or assets."

All of the 4¼ per cent Fourth Liberty Loan bonds involved in this cause in the chancery court (including those deposited by appellant Howard) were unregistered and negotiable by delivery, and they were "identical, with the exception of the denominations and the serial numbers thereof."

Neither the Chase National Bank nor the Citizens' Union National Bank nor the United States Treasury Department knew that any of said bonds pledged to them, respectively, as aforesaid, were claimed by anyone except the Citizens' Bank.

The United States 4¼ per cent Fourth Liberty Loan bonds which we have enumerated aggregated $31,650, and of these the Citizens' Bank claimed in its own right $550, and the receiver has sold $550 (par value) of said bonds, but the sale price does not appear in the record. The remaining $31,100 of said bonds had been deposited with the Citizens' Bank prior to its insolvency by thirty-three depositors, twenty-two of whom filed petitions and cross-bills in this cause in the chancery court seeking to recover the bonds, or to recover the value thereof as a preferred claim; but, so far as appears here, only the claim of appellant Howard has been adjudicated by the chancellor.

Each of said depositors was given a numbered "certificate of deposit" in the same form and of the same tenor and effect as that given to appellant Howard which we have heretofore copied into this opinion. The Citizens' Bank kept a record book, known as the "Bond Register," in which was entered certain data descriptive of all 4¼ per cent Fourth Liberty Loan bonds thus deposited by customers or patrons of the bank, and which Bond Register contained the number of the "receipt" issued to each depositor of such bonds, the date of the deposit, the name of the person "by whom deposited," and the "amount" (which "amount" was in every instance, the par, or face, value of the bond or bonds deposited).

The record contains a list of all the United States 4¼ per cent Fourth Liberty Loan bonds which had been thus deposited in the Citizens' Bank and had not been "withdrawn" prior to the receivership, with the above-stated data as to each of such deposits.

At the interest-paying period in each year (April 1 and October 1), the interest on the bonds represented by each certificate was passed to the credit of the depositor, and was subject to his check, but the bonds were not subject to check, and were not carried on the individual ledger, or to the credit of the depositors in their checking or savings accounts.

Said bonds were carried as a part of the assets of the Citizens' Bank on its general ledger and in its daily statement and in its published statements, and the aggregate of all United States Government bonds was carried as the property of the Citizens' Bank, whether said bonds were in the vault of said bank or pledged as collateral to its obligations or deposited for safekeeping in the American National Bank.

The Citizens' Bank kept a duplicate of each certificate of deposit issued by it, but kept no record of the serial numbers or the denominations of United States 4¼ per cent Fourth Liberty Loan bonds deposited in the manner stated, or of those it owned in its own right, and, aside from the "Bond Register" aforementioned, it kept only the aggregate of the bonds so deposited, and made no attempt to segregate the bonds thus deposited or keep them separate and apart from other bonds in its possession.

On April 13, 1926 (when appellant Howard deposited $1,050 in bonds as stated), the Citizens' Bank had $18,446.37 in cash in its vault, and an aggregate of $28,398.85 to its credit in five other banks, to which other banks it owed at that time bills payable aggregating $70,000.

When the Citizens' Bank closed on June 26, 1931, it had $24,-384.91 in cash in its vault.

For the past twelve years, the Citizens' Bank "has always had on hand in its vaults, and due from correspondent banks, an aggregate sum of more than $31,100."

While the Citizens' Bank was "in operation," prior to June 26, 1931, various depositors of bonds holding certificates of deposit in the same form and to the same tenor and effect as that of appellant Howard, presented their certificates to the bank and called for the return of their respective bonds as called for by their certificates, and on such occasions the bank would deliver to them 4¼ per cent Fourth Liberty Loan bonds of the amount called for by their respective certificates, irrespective of the market value of said bonds at that time, or the serial number of the bond or bonds. During the same period of time, prior to June 26, 1931, ''various bond depositors presented their certificates of deposit, and received cash or credit for the market value of Fourth U. S. Liberty Loans deposited.''

The ''receipts,'' or ''certificates of deposit,'' issued by the Citizens' Bank for United States 4¼ per cent Fourth Liberty Loan bonds deposited by the claimants who filed petitions in this cause below, were ''filled in'' for the par value or face value of the bond or bonds deposited, regardless of the market value of such bond or bonds.

The Citizens' Bank carried insurance against robbery and burglary for the protection of the bonds deposited. The premiums on said insurance were paid by said bank out of its general funds and earnings.

Carson F. Vaughan, who was assistant cashier of the Citizens' Bank continuously from June 1, 1925, until said bank closed on June 26, 1931, testified at length (as a witness for the receiver) concerning the Citizens' Bank's methods of conducting its business, and stated, among other things, that, beginning in 1920, the Citizens' Bank handled ''a great many'' bonds, viz., ''different issues of Government bonds; First and Fourths, and Treasury; and possibly others; various municipal bonds; quite a few first mortgage real estate bonds,'' and ''some County bonds;'' that the president of the bank, W. L. Abernathy, Jr., chiefly conducted the handling of these bonds and the receipt of them from customers; that, at the time the bank closed, it had an aggregate amount of $40,000 insurance (against burglary and robbery) on its ''cash and securities;'' and that the inventory made by the state banking department as of June 26, 1931 (the day the bank closed), shows the aggregate amount of bonds deposited in the Citizens' Bank as $282,350, consisting of county and town bonds ($91,500), Citizens' Bond & Investment Company bonds ($145,800), real estate bonds other than Citizens' Bond & Investment Company ($4,700), Fourth Liberty Loan bonds ($31,100), Treasury certificates ($9,000), First Liberty Loan ($150), and First Liberty Loan converted ($100).

With reference to the manner in which a deposit of bonds was handled by the Citizens' Bank, Mr. Vaughan testified as follows:

"Q. Mr. Vaughan, when a bond was brought in for deposit, explain in detail how the transaction was handled, as shown by the records of this Bank? A. A receipt or certificate of deposit was issued for the bond deposited at the time it was brought in; that was made in duplicate; the duplicate remained in the files of the Bank; from that certificate of deposit—

"Q. From the duplicate? A. Yes, a record or debit and credit tickets were made for entry on the day book, each day, and to be posted on the general ledger.

"Q. If I understand you at the close of business of the day, the duplicate certificates of deposit were gathered together and tickets were made—debit and credit tickets—or were the tickets made at the time the deposit of the bond was made? A. Usually at the time of the deposit of the bond; I don't recall any instance where the day book was posted from the duplicate certificate of deposit; tickets were made for each individual transaction, and not lumped together.

"Q. These tickets were posted directly to the Bank's day book where all of the business of the Bank for that day was shown? A. That's correct.

"Q. Now, how did this transaction get on the general ledger of the Bank—if it did get on there? A. The day book—the general ledger was posted each day from entries on the day book, and also on—posted to the daily statement.

"Q. From the day book? A. From the general ledger.

"Q. Did the day book, the general ledger, and the daily statement show all of the daily transactions of the Citizens' Bank? A. Supposed to, yes, sir. . . .

"Q. People who deposited various bonds at the Citizens' Bank frequently bought those bonds from the bank, did they not? A. That is true.

"Q. And frequently the bonds were brought in, having been purchased from other sources? A. Yes, sir.

"Q. Did the Bank frequently sell bonds to the parties investing in bonds? A. Sold quite a few municipals, County, and Citizens Bond & Investment Company bonds; the records do not show where a very large number of Government bonds were sold by the Bank.
. . .

"Q. When those bonds were received on deposit, what became of the bonds at the close of business that day or at the time they were received? A. They were kept in the safe located inside the vault.

"Q. Is that the place where the Bank kept bonds and money? A. Yes, sir.

"Q. Customers frequently came in with their certificates to get bonds, did they not? A. They did.

"Q. Was there any effort made or was it possible to have given them the identical bonds that they deposited unless the record of the serial numbers had been kept? A. I know of no way in which it could have been done."

It appears from the cross-examination of Mr. Vaughan that the Citizens' Bank's methods of handling bonds deposited were criticized by the state banking department. On this subject, we quote from Vaughan's cross-examination as follows:

"Q. Mr. Vaughan I here hand you the report of Mr. J. M. Davis, Examiner of State Banks of date September 15, 1929; or rather a copy thereof, and will ask you if in his report he does not criticize the Citizens' Bank on account of the manner in which the bonds deposited were handled? A. The report says: 'The practice of this Bank in accepting on deposit bonds for customers and issuing their receipts for same thereby inflating the face of their statement in very unsatisfactory condition here; they should at least keep this class of bonds separate from their own in their statement and in the vault; nor should they be permitted to use other than their own bonds as collateral to bills payable.'

"Q. I here hand you a copy of the report of Mr. J. M. Davis, of date March 21, 1929, and will ask you if they do not in that report likewise criticize the Bank and express their disapproval of the manner in which the bonds were handled? A. The report says: 'Practice of soliciting bonds for safekeeping upon receipts should be discouraged and discontinued as much as possible; and put in balance.' "

With reference to appellant Howard's deposit involved in this case, Mr. Vaughan testified as follows:

"Q. This day book that you have before you and under date of April 13, 1926, does show by an entry made thereon 'U. S. Bonds deposited 4th G. W. Howard $1050.' A. Yes, sir.

"Q. That was entered on page 324? A. Yes, sir.

"Q. Showing that there was left by G. W. Howard the sum of $1050 of 4th Liberty Loan bonds; the actual value of those bonds was not entered on this day book as of that date, was it? A. No, sir.

"Q. But the face of the bond was entered and so carried? A. The par value or face value of the bond was entered.

"Q. On page 325 there is a similar entry on the debit side of the day book made to offset the credit side; isn't there? Which reads U. S. Bonds, 4th, dep. by G. W. Howard $1050? A. U. S. Bonds account is charged with $1050 and U. S. Bonds deposited are credited with the same amount, from the above entries.

"Q. Then in this way every time a bond was deposited it increased the assets of the Citizens' Bank as it was carried on your

268

books; is that true? A. The assets of the Bank would be increased to that extent; and also the liability.

"Q. And also at the same time, the Citizens' Bank would make an entry to increase its liability to the amount of the bond so deposited? A. That is true.

"Q. Can you tell me why each bond so deposited was listed on the credit side and also on the debit side of this day book each day that the same was left for deposit? A. The only way to set up the Bank's liability on its record is to post to both the debit and credit sides of its ledgers.

"Q. Nowhere else was any entries made as I understand of such bonds deposited, other than on this day book; and also on the bond register that you have referred to? A. That's all that I know of.

"Q. Were these entries not also made for the purpose of keeping up with who had bonds in the Bank? A. The duplicate certificate of deposit was kept of each individual deposit of bonds which set up just who owned or had deposited certain classes of bonds.

"Q. My question is, do you know what other purpose this entry was for by using the man's name, and amount so left or deposited, entered on the debit and credit side of your day book? Was that not also made for keeping up with who had bonds in the Citizens' Bank? A. I don't know of any instance where this book was referred to to find that a certain party had deposited bonds."

We quote further from the cross-examination of Carson F. Vaughan, as follows:

"Q. Where a bond was withdrawn, what entries then were made on the daily record of the Bank? A. Miscellaneous or government bonds deposited account as the case might be would be debited with the amount of bonds withdrawn and miscellaneous or government bond account credited with that amount.

"Q. Face or the real value? A. With the face amount of the withdrawal. . . .

"Q. Did the Citizens' Bank try to keep on hand at all times while it was in operation, sufficient bonds of the class as represented by outstanding receipts, or certificates of deposit? A. Not in the vaults of the Bank.

"Q. But in the assets of the Bank you attempted to keep on hand an amount equivalent to the outstanding certificates of deposit? A. I suppose that was the intention; however, I have found by perusing the daily statement, that there have been times when the records do not show sufficient Government bonds on hand, to cover outstanding certificates of deposit. . . .

"Q. Mr. Vaughan after the closing of the Citizens' Bank on June 26, 1931, was there delivered to any person holding certificate of deposit or receipt any Government 4¼ 4th Liberty Loan bond or bonds? A. No, sir.

"Q. Has there been up to this date any delivery of such bonds to parties holding receipt or certificate of deposit of that class? A. No, sir.

"Q. You have checked the records considerably and made a thorough investigation have you not, of the bonds that were on hand at the time the Citizens' Bank closed its doors? A. Yes, sir.

"Q. From your inspection and investigation of these records, how many bonds or what amount of bonds of the 4¼ 4th Liberty Loan issue, was claimed to be the absolute property of the Citizens' Bank? A. $550.

"Q. Those bonds have been sold since the appointment of a Receiver, have they not? A. Yes, sir. The Government bonds have been sold.

"Q. At what price? A. I haven't got the price.

"Q. This particular bunch I mean; and the date? A. I haven't the price here. . . .

"Q. Mr. Vaughan, in cases where customers of the Bank brought their bonds in and left them here, and received a receipt, similar to the ones involved in this cause; if any one else came in next day and wanted to buy a Government bond, would the officials of the Bank go back to the vault and get that bond and sell it to him? A. There is no way I know of, after that bond entered the safe, to tell whether they were selling him that specific bond or some other bond that the Bank owned, outright."

Mr. W. L. Abernathy, Jr., who, as president of the Citizens' Bank, represented the bank in the transactions with appellant Howard and appellee Davenport (and also with practically all others who deposited bonds in the Citizens' Bank), died on the day the bank closed (June 26, 1931), and his testimony was, of course, not available in this case.

The record contains depositions of a number of bond claimants whose claims have not been adjudicated by the chancellor, and are not now directly in issue here. The testimony of these latter deponents is not directly relevant to the claims of appellant Howard or appellee Davenport, unless it may be considered as tending to show the general plan, system, and course of business of the Citizens' Bank as to deposits of bonds therein by the bank's patrons (1 Wigmore on Evidence, secs. 372-377), in which aspect it is, at most, merely cumulative to the facts disclosed by the testimony of G. W. Howard and Carson F. Vaughan, hereinbefore stated, the testimony of J. M. Davenport which will be hereinafter stated, and stipulated facts which have been hereinbefore stated with reference to the 4¼ per cent Fourth Liberty Loan bonds, and other stipulated facts with reference to municipal bonds which will be stated later.

Now, upon the foregoing facts disclosed by the record, did the chancellor err in decreeing that appellant Howard is not entitled to

be adjudged a preferred creditor of the Citizens' Bank, and in limiting the relief granted him to an adjudication that he is a general creditor of said bank to the extent of the market value of said United States $4\frac{1}{4}$ per cent Fourth Liberty Loan bonds deposited by him.

It is seen that the total amount of United States $4\frac{1}{4}$ per cent Fourth Liberty Loan bonds deposited in the Citizens' Bank, and not withdrawn by the depositors, prior to the time the bank closed on June 26, 1931, was $31,100, for which certificates of deposit of the same form, tenor, and purport as said certificate No. 508 held by appellant Howard, had been issued by the bank and were outstanding; that petitions and cross-bills have been filed in this cause in the chancery court by claimants, in the aggregate, for all of said bonds, seeking preferential payment out of the assets in the hands of the receiver; that the receiver has in his possession $11,400 of $4\frac{1}{4}$ per cent Fourth Liberty Loan bonds which constitute a part of the aforesaid aggregate of $31,100 of such bonds deposited by the claimants in this cause, or bonds of the same character and value substituted therefor; and that at least a part of the sum of $1,325.05 paid to the receiver by the Citizens' Union National Bank is made up of proceeds of the sale of $4\frac{1}{4}$ per cent Fourth Liberty Loan bonds pledged to the Citizens' Union National Bank as aforesaid.

Laying aside, for the present, the consideration of the above-mentioned fund of $1,325.05, we inquire: Who is the rightful owner or owners of the said $11,400 of $4\frac{1}{4}$ per cent Fourth Liberty Loan bonds now held by the receiver?

For the receiver it is insisted that the "certificate of deposit" issued to appellant Howard is a contract which, by its terms, created the relation of debtor and creditor between the Citizens' Bank and appellant Howard, and vested the title to the bonds in the bank.

On the other hand, it is the contention of appellant Howard that the "certificate of deposit" is merely a "receipt," and, therefore, subject to explanation, or even contradiction, by parol evidence (Shannon's Ann. Code, sec. 5570 and notes thereunder; 4 Jones on Evidence [2 Ed.], sec. 1630, p. 2985), and that said "receipt," when read in the light of the proof, including the stipulated facts, created the relationship of bailor and bailee, or cestui que trust and trustee, between appellant Howard and the bank, and that no title to the bonds vested in the bank, other than as such trustee.

We think the true construction of the "certificate of deposit" lies between the two extreme views of the contending parties. It is both a receipt and a contract. It is a receipt in so far as it acknowledges that G. W. Howard has deposited in the Citizens' Bank the sum of $1,050 in United States Fourth $4\frac{1}{4}$ per cent Liberty Loan bonds, and it is a contract in so far as it is stipulated therein

that the bonds deposited will be delivered on the return of the certificate, properly indorsed, and that interest on the bonds will be collected and credited to the account of the depositor. 4 Jones on Evidence (2 Ed.), pp. 2994, 3029, 3030; Kenner v. City National Bank, 164 Tenn., 119, 137, 46 S. W. (2d), 46; Weisinger v. Bank, 10 Lea, 330, 335.

Moreover, it is a familiar rule that the circumstances and conditions surrounding the parties at the time of the execution of a written contract may be shown, in order that the court may put itself in the place of the contracting parties, and thus see how the terms of the instrument affect the property or subject-matter of the contract. Knoxville, C. G. & L. Ry. Co. v. Beeler, 90 Tenn., 548, 552, 18 S. W:, 391.

Government and municipal bonds, or similar securities, may be the subject of a special deposit in a bank. See Annotation, 50 A. L. R., page 249 et seq.

When construed in the light of the competent evidence in the record, the certificate of deposit, No. 508, issued to appellant Howard, evidenced a special deposit in the nature of a bailment. It was the uniform and unvarying custom and practice of the Citizens' Bank, in issuing certificates of deposit for bonds deposited by its customers, to acknowledge the sum deposited at the par, or face, value of the bond or bonds, as was done in Howard's certificate No. 508, although, as the record shows, the market value of such securities was subject to fluctuation, and United States 4¼ per cent Fourth Liberty Loan bonds were usually sold at a premium on the market.

The agreement of the bank, stated in the certificate, to collect the interest on the bonds at each interest-paying period and credit same to the account of the depositor, is also consistent with the idea that the bonds remained the property of the depositor, and is inconsistent with the theory of a sale or transfer of title to the bank.

We do not think that, in the light of the stipulated and proven facts, it could be reasonably held that the certificate of deposit evidenced an agreement by the bank to pay to appellant Howard $1,050 in cash on the return of said certificate. It was rather a contract that, upon the return to it of the certificate, properly endorsed, the bank would deliver to Howard the bonds which he had deposited.

A certificate of deposit of United States Fourth Liberty Loan 4¼ per cent bonds, couched in substantially the same terms as the certificate held by appellant Howard, was construed as creating a trust in favor of the depositor, in the case of Gwynn v. Spurway (D. C.), 28 F. (2d), 37.

It was likewise held by the Supreme Court of Iowa, in the case of Leach v. Sanborn State Bank, 203 Iowa, 401, 212 N. W., 694, 697, 51 A. L. R., 900, 904, that a similar certificate of deposit created a "trust relationship." See, to same effect, Farmers' Bank of White

Plains v. Bailey et al., 221 Ky., 55, 297 S. W., 938; Bailey v. Farmers' Bank, 227 Ky., 179, 12 S. W. (2d), 312, 313, and Andrew v. Citizens' State Bank, 203 Iowa, 345, 212 N. W., 745, 51 A. L. R., 906.

As we understand his written opinion brought up in the record, the learned chancellor upheld the contention of the bond claimants that "the certificate of deposit on its face evidences nothing more than a bailment, and therefore creates a trust;" but his honor held, and expressly decreed, that appellant Howard "is not entitled to be adjudged a preferred creditor for the reason that he cannot trace his property or the proceeds thereof."

The chancellor held that, in the absence of evidence specifically identifying by serial numbers (or some other equally convincing proof) the United States $4\frac{1}{4}$ per cent Fourth Liberty Loan bonds now in the hands of the receiver as the same bonds deposited by appellant Howard, he (Howard) is not entitled to be adjudged a preferred creditor, and that, for the want of such specific identification by any of the claimants of United States $4\frac{1}{4}$ per cent Fourth Liberty Loan bonds there is no basis in the record for a distribution pro rata of the $11,400 of such bonds among the thirty-three depositors of the $31,100 of such bonds deposited.

In the Iowa case of Leach v. Sanborn State Bank, supra, it was held that, "if a trust fund is established, a presumption arises that it was retained in the possession of the trustee and came into the hands of the receiver, and the burden is upon the receiver to overcome this presumption;" but it appears to be the rule in Tennessee that the burden is upon the claimant to trace and identify the fund in the hands of the receiver, and, in the absence of proof, the presumption is in favor of the general creditors of the bank. Klepper v. Cox, 97 Tenn., 534, 539, 37 S. W., 284, 34 L. R. A., 536, 56 Am. St. Rep., 823; Bruner v. Bank, 97 Tenn., 540, 546, 37 S. W., 286, 34 L. R. A., 532; Friberg v. Cox, 97 Tenn., 550, 554, 37 S. W., 283.

It does not appear from the record, and there is no reasonable probability that it could be shown, that any of the said $11,400 of United States $4\frac{1}{4}$ per cent Fourth Liberty Loan bonds now in the hands of the receiver were deposited by appellant Howard or any of the claimants who have intervened in this cause in the chancery court, because of the absence of a record, or of proof, of the serial numbers of the bonds deposited by appellant Howard and/or the other claimants of United States $4\frac{1}{4}$ per cent Fourth Liberty Loan bonds.

However, if the $11,400 of $4\frac{1}{4}$ per cent Fourth Liberty Loan bonds now in the hands of the receiver were not deposited by appellant Howard and the other interveners of the same class, but have been substituted therefor, either in whole or in part, merely as a result of the commingling of such bonds in the vault of the Citizens' Bank, no injustice has been done to anyone by such sub-

stitution, for one United States 4¼ per cent Fourth Liberty Loan bond is the precise equivalent to another one of such bonds of the same denomination.

In the case of Bailey v. Farmers' Bank, supra, wherein a deposit of bonds in a bank was the subject-matter of the litigation, the court said: "One of the most important rights of the bailor is that upon the termination of the bailment, he shall have returned to him the identical thing bailed or the product thereof, or the substitute for that thing."

In 3 R. C. L., pp. 112, 113, § 35, it is said:

"Where personal property has been wrongfully converted by the bailee, the bailor is entitled to recover his specific property or its value, and cannot be compelled to accept other property of the same kind and of equal value, in lieu of that which was converted, although of course there can be no doubt that, if the bailee of personal property sells it in violation of his authority, the owner may ratify the transaction and demand the proceeds of the sale. When applied to stocks, however, it seems that a different rule governs. Thus if the bailee of certificates of stock sells the same for his own use, and afterwards tenders to the bailor other like certificates of stock in the same company, which are refused, it seems that the bailee is not liable for converting the stock. The reason for this exception to the general rule is that as each certificate of stock is a precise equivalent of every other, it is certain that the bailor could suffer no pecuniary loss by the transaction; while the nature of the property, or rather of his interest in it, forbids the idea that it could be the object of personal attachment, or have a peculiar value in his estimation, as contradistinguished from any other equal number of shares in the same company."

See, also, 6 C. J., p. 1139, sec. 92.

In the case of the deposit of grain in warehouses, where the grain delivered to the warehouseman for storage is commingled with that of others, so that the identical grain delivered cannot be returned, the warehouseman is under the obligation to return, and the depositor can demand the return, of a like amount of other grain of the same quality. "In such case the better rule seems to be that the transaction is a bailment, so long as the receiver always keeps on hand sufficient grain to meet all demands, and the relation between the depositors is that of tenants in common of the mass, each being entitled to such a proportion thereof as his share bears to the whole amount; and the fact that the identity of the mass is continually shifting, by being added to and taken from, does not alter the relation. Such a rule is required by the commercial interests of the country, conforms to the general usage and custom existing in the industry, and is in harmony with the cardinal principle that the intention of contracting parties is always to be given effect."

By analogy, we think the same principle should be applied to a deposit of unregistered, negotiable United States bonds; and, further, we are of the opinion that, inasmuch as the $11,400 of United States 4¼ per cent Fourth Liberty Loan bonds in the hands of the receiver have been identified as a part of the $31,100 of such bonds deposited by the thirty-three depositors, including appellant Howard (or bonds of the same kind and value), it would (as held in Re Farmers' & Merchants' Savings Bank, 202 Iowa, 859, 211 N. W., 532, 534, 51 A. L. R., 910, 912) "be manifestly inequitable and unjust to deprive the claimants thereof, and thereby swell the assets of the bank which never acquired title thereto," to the advantage of the general creditors, who never contributed any part of said bonds, although the receiver does not now have, and has never had, on hand enough of such bonds to meet the demands of all the depositors thereof.

The fact that the United States 4¼ per cent Fourth Liberty Loan bonds in the hands of the receiver were obtained by exchange or substitution for the bonds deposited by appellant Howard and the other claimants, rather than purchased with the proceeds of the claimants' bonds, is not a controlling fact. In Cook v. Tullis, 85 U. S. (18 Wall.), 332, 342, 21 L. Ed., 933, 937, the court referred to the case of Taylor v. Plumer, 3 Maule & S., 562, as illustrating the rule of equity jurisprudence that where property held upon any trust to keep, or use, or invest it in a particular way, is misapplied by the trustee and converted into different property, or is sold and the proceeds are thus invested, the property may be followed wherever it can be traced through its transformations, and will be subject, when found in its new form, to the rights of the original owner or cestui que trust.

The court then said: "It is contended that the doctrine of this case (Taylor v. Plumer, supra) does not apply, because the note and mortgage were not purchased with the proceeds of the bonds taken, but were substituted for them. We do not think this fact takes the present case from the principle upon which the other proceeds, that property acquired by a wrongful appropriation of other property covered by a trust, is itself subject to the same trust. It cannot alter the case that the newly acquired property, instead of being purchased with the proceeds of the original property, is obtained by a direct exchange for it. The real question in both cases is, what has taken the place of the property in its original form? Whenever that can be ascertained, the property in the changed form may be claimed by the original owner or the cestui que trust, and assignees and trustees in bankruptcy can acquire no interest in the property in its changed form which will defeat his rights in a court of equity."

Appellant Howard is not entitled to recover his bonds to the full

amount of $1,050; because we cannot presume that, in the depletion of the commingled mass of United States 4¼ per cent Fourth Liberty Loan bonds in its care, the Citizens' Bank wronged the other thirty-two depositors of such bonds to the advantage of appellant Howard; and his claim can, therefore, rise no higher than the claims of others whose bonds were deposited in the Citizens' Bank under the same circumstances and conditions and handled in the same manner. Bragg v. Osborn, 147 Tenn., 381, 385, 386, 248 S. W., 19; Commonwealth ex rel. Bell v. Tradesmen's Trust Co., 250 Pa., 378, 95 A., 577, L. R. A., 1916C, 10.

But we think appellant Howard is entitled to his ratable share of said $11,400 of 4¼ per cent Fourth Liberty Loan bonds held by the receiver, in the proportion that the bonds deposited by him ($1,050) bears to the whole amount of such bonds, viz., $31,100.

■ Apparently the petitions and cross-bills of all claimants of United States 4¼ per cent Fourth Liberty Loan bonds (except that of appellant Howard) are pending and undetermined in this cause in the chancery court, and as the case, so far as appealed, must be remanded to that court, we see no legal obstacle to the proper distribution of the said 4¼ per cent Fourth Liberty Loan bonds, or their proceeds, among the claimants therefor, under decrees of the chancery court in harmony with this opinion. In re Farmers' & Merchants' Savings Bank, supra, 202 Iowa, 859, 211 N. W., 532, 51 A. L. R., pages 912, 913; McConnell v. Henochsberg, 11 Tenn. App., 176; Code of 1932, sec. 9054 (Shannon's Ann. Code, sec. 4905, and notes thereunder).

The remainder of the $31,100 of 4¼ per cent Fourth Liberty Loan bonds (after deducting $11,400 in the hands of the receiver as aforesaid) were converted and the proceeds dissipated by the Citizens' Bank, and, so far as appears, cannot be traced and identified, except that the sum of $1,325.05 paid to the receiver by the Citizens' Union National Bank, of Louisville, Kentucky, as hereinbefore stated, was, either in whole or in part, proceeds of the sale of such bonds.

■ It will be recalled that when the Citizens' Bank closed on June 26, 1931, it owed the Citizens' Union National Bank $9,985.41, and the latter bank held as collateral security to said debt $9,700 (face value) of said United States 4¼ per cent Fourth Liberty Loan bonds deposited in the Citizens' Bank by the claimants in this case (or bonds of the same kind and value which had been substituted for the bonds of such claimants), and $1,000 (face value) of bonds of a different kind owned by the Citizens' Bank in its own right. All of said collaterals were sold by the Citizens' Union National Bank on June 30, 1931, for the sum of $11,310.46, and, after satisfying its claim of $9,985.41, the Citizens' Union National Bank remitted the excess ($1,325.05) to the receiver of the Citizens' Bank

on July 7, 1931. The $9,700 of 4¼ per cent Fourth Liberty Loan bonds brought $10,228.25 at said sale, and the depositors of said bonds were clearly entitled to the excess of $242.84 over the debt of $9.985.41. But the $1,000 (face value) of collaterals owned by the Citizens' Bank, and sold on the same day, brought $1,082.21.

Will it be presumed that the Citizens' Union National Bank remitted this latter sum to the receiver, or, on the other hand, will it be presumed that the proceeds of the collaterals owned by the Citizens' Bank in its own right were applied pro tanto to the discharge of the debt of the Citizens' Bank to the Citizens' Union National Bank?

The Citizens' Bank held the $9,700 of 4¼ per cent Fourth Liberty Loan bonds it pledged to the Citizens' Union National Bank, in a fiduciary capacity, and it owned in its own right the remaining collaterals pledged for the same debt. The doctrine of the leading cases of Knatchbull v. Hallett, L. R., 13 Ch. Div., 968, and Central National Bank v. Conn. Mutual Life Insurance Co., 104 U. S., 54, 26 L. Ed., 693, recently approved and followed by our Supreme Court in State ex rel. Robertson v. Bank of Bristol, 165 Tenn., 461, 55 S. W. (2d), 771, 774, is that: "Where a trustee blends in a bank account his own money with the beneficiary's, from which account the trustee subsequently withdraws funds, the withdrawals will be presumed to be the trustee's own funds, which he had a right to withdraw, and the balance will be presumed to include the beneficiary's funds, which the trustee had no right to use."

The underlying principle of Knatchbull v. Hallett, and cases in accord, is that it will be presumed that the trustee intended to be honest and not breach his trust, and, therefore, in drawing money from the mixed bank account, drew first his own money and left the trust money intact until his own money was exhausted. This principle was also applied by our Supreme Court in the case of Brocchus v. Morgan, 3 Shan. Cas., 667, and by this court in Cole v. Lunn, 8 Tenn. App., 470.

In accord with the principles above stated, we think it must be presumed that the Citizens' Bank intended that its own collaterals should be exhausted before resorting to those held by it in a fiduciary capacity, and, therefore, the proceeds of the bonds owned by the Citizens' Bank ($1,082.21) were credited on its debt to the Citizens' Union National Bank, so that the entire sum remitted to the receiver ($1,325.05) represented a part of the proceeds of the 4¼ per cent Fourth Liberty Loan bonds belonging to the claimants of such bonds, in the same proportions as before indicated for the distribution of the $11,400 of 4¼ per cent Fourth Liberty Loan bonds now in the hands of the receiver.

After the ratable share of appellant Howard in the trust funds has been ascertained, he will be entitled to a decree against

the receiver, as a general creditor, for the remainder of the market value of the 4¼ per cent Fourth Liberty Loan bonds deposited by him, as described in his said certificate of deposit No. 508. Gwynn v. Spurway (D. C.), 28 F. (2d), 37; Bailey v. Farmers' Bank, 227 Ky., 179, 12 S. W. (2d), 312; In re Farmers' & Merchants' Savings Bank, 202 Iowa, 859, 211 N. W., 532, 51 A. L. R., 910, 914.

This, we think, disposes of all of the questions arising on the appeal of Howard. However, before concluding our opinion on this branch of the case, we deem it proper to refer more specifically to one of the contentions of the learned counsel for appellant Howard to which, as our opinion has already indicated, we have not assented.

Counsel say in the course of their able and elaborate brief that: "If the Receiver had performed his duty and redeemed the bonds that were pledged, this situation or this litigation would not have arisen; but by selling the bonds they left that amount of assets in the four walls of the Citizens' Bank, or its equivalent, and therefore the product or representative of said bonds, although it cannot be identified, the assets of the Bank are swelled by just the amount of the sale price of said bonds, and that the amount so added belongs to claimants, together with the bonds now in the Citizens' Bank."

In the case of McDowell v. McDowell, 144 Tenn., 452, 456, 234 S. W., 319, 320, 18 A. L. R., 623, our Supreme Court rejected the doctrine that, "if one's general estate has been swelled by the proceeds of trust property, the trust may be established against the general assets although the estate be insolvent." The court said that "this view formerly prevailed in some jurisdictions, but seems to have been abandoned almost everywhere now." In support of its opinion just stated the court cited, among other authorities, Akin v. Jones, 93 Tenn., 353, 27 S. W., 669, 25 L. R. A., 523, 42 Am. St. Rep., 921; Sayles v. Cox, 95 Tenn., 579, 32 S. W., 626, 32 L. R. A., 715, 49 Am. St. Rep., 940; Klepper v. Cox, 97 Tenn., 534, 37 S. W., 284, 34 L. R. A., 536, 56 Am. St. Rep., 823, and an elaborate note under the case of Macy v. Roedenbeck, 227 F., 347, 142 C. C. A., 42, following the report of that case in L. R. A., 1916C, 12, 21.

We now come to the consideration of the claim of J. M. Davenport:

On October 2, 1931, J. M. Davenport intervened in this cause in the chancery court by petition, and filed his petition as a cross-bill against the Citizens' Bank, D. D. Robertson, superintendent of banks and receiver of said Citizens' Bank, and J. L. Hutton, liquidating agent of said Citizens' Bank, and petitioner Davenport alleged that he was and is the owner of certain municipal bonds, aggregating $1,000, $500 of which, on October 4, 1926, he left for safe-keeping with the Citizens' Bank as shown by receipt No. 550, and the other $500 he left with the Citizens' Bank for safe-keeping on January

5, 1928, as shown by receipt No. 676, which said receipts are in the words and figures following, to-wit:

"Certificate of Deposit of Dyer, Tennessee, Sewer Bond
"The Citizens' Bank:                                                    $500.00
"No. 550     Pulaski, Tenn.     Oct. 4th, 1926.
"J. M. Davenport has deposited in this Bank the sum of Five Hundred Dollars, Dyer, Tenn. Sewer Bonds. 5½% maturing 1936 which will be delivered on the return of this certificate properly endorsed. Interest on bonds from Oct. 1st, 1926, will be collected and credited to account of depositor.

"Interest periods April & October.

"Not negotiable.

"W. L. Abernathy, Jr., Prest."

"Certificate of Deposit of Municipal Bonds
"The Citizens' Bank.                                                    $500.00
"No. 676     Pulaski, Tenn.     Jan. 5th, 1928.
"J. M. Davenport has deposited in this Bank the sum of Five Hundred Dollars, Dyer, Tenn. Sewer 5½% Bd. maturing 1936, which will be delivered on the return of this certificate properly endorsed. Interest on bonds from Oct., 1927, will be collected and credited to account of depositor.

"Interest periods April & October

"Not negotiable.

"W. L. Abernathy, Jr., Prest."

The original receipts or certificates of deposit are filed as exhibits to the petition.

Petitioner Davenport further alleges that after the insolvency and receivership of the Citizens' Bank he demanded the delivery of the above-described bonds, but said receiver and his agents have arbitrarily and wrongfully refused to deliver the same to petitioner, and now refuse; said refusal being based upon the alleged grounds that petitioner's bonds are not sufficiently described as to identify them as his property. Petitioner Davenport further alleges that he deposited said bonds in the Citizens' Bank for the sole purpose of safe-keeping, and not as a deposit to be drawn against, and this deposit was neither a checking account nor a savings account, but said bonds were to be safely kept by said bank and returned to him upon demand and surrender of the receipts; and petitioner alleges and charges that this constitutes a special deposit, and that the relation of debtor and creditor between said bank and petitioner was never created, and that said bank had notice and petitioner is entitled to the return of his bonds, or if the same have been sold, to have his claim therefor allowed as a preferred claim and given priority in payment of the depositors and other creditors of said bank. The prayer of Davenport's petition and cross-bill is in accord with the foregoing allegations. It contains many other allegations,

but we think that what allegations we have stated are sufficient for present purposes.

The receiver, D. D. Robertson, and the liquidating agent, Joe L. Hutton, answered J. M. Davenport's cross-bill on January 9, 1932, and admitted that said J. M. Davenport deposited with said Citizens' Bank, on the dates named, the bonds described in his petition and cross-bill, and that the certificates of deposit evidencing these facts are correctly copied in said cross-bill.

Cross-defendants further admitted that said Davenport has made formal demands on them for the return of the bonds mentioned in said certificates of deposit, but that there are many bonds of the same description and designated as Dyer, Tennessee, Sewer Bonds, and that it is impossible for said Davenport or any one else to identify said bonds mentioned and described in his said certificates of deposit.

The chancellor's decree with respect to the claim of J. M. Davenport and his findings embraced therein are as follows:

"This cause came on this the 28th day of April, 1932, to be further and finally heard before the Hon. Thos. B. Lytle, Chancellor, upon the original bill, the petition and cross-bill of J. M. Davenport filed in this cause on the 2nd day of October, 1931, and upon the exhibits in the record, the stipulations of fact, and upon the testimony and the entire record in this cause,—from all of which it duly appears to the Court as follows:

"That the petitioner and cross-complainant, J. M. Davenport, on October 4, 1926, deposited in the Citizens' Bank a $500 Dyer, Tennessee, Sewer bond drawing 5½% interest, maturing in 1936, and on Jan. 5, 1928, he deposited another $500 Dyer, Tennessee, 5½% bond, maturing in 1936, and at the time he deposited said respective bonds the Citizens' Bank issued to him certificates of deposit Nos. 550 and 676, respectively.

"It further appears to the Court that from said respective certificates of deposit, and from the stipulations of fact filed in this case, that said J. M. Davenport on October 4, 1926, purchased from the Citizens' Bank one $500 Dyer, Tennessee, Sewer bond bearing 5½% interest and maturing in 1936, the same being serial #39 of said issue, and that on January 5, 1928, said Davenport purchased from the Citizens' Bank one $500 Dyer, Tennessee, Sewer bond drawing 5½% interest maturing in 1936, the same being serial #40, and from the testimony of said J. M. Davenport on file in this record, it appears to the Court that said J. M. Davenport on said respective dates deposited with the Citizens' Bank said respective bonds Nos. 39 and 40, and accepted said certificates of deposit as evidence thereof, as aforesaid.

"And it further appears to the Court that said bonds after the closing of said Citizens' Bank and after it was adjudicated as in-

solvent on June 29, 1931, passed into the hands of complainant, D. D. Robertson, as Receiver of said Citizens' Bank and said Receiver now has in his hands said Dyer, Tennessee, bonds Nos. 39 and 40, each for the sum of $500.

"It is therefore ordered, adjudged and decreed by the Court that the Receiver deliver to said J. M. Davenport said bonds Nos. 39 and 40 upon his surrender to the Receiver his said certificates of deposit Nos. 550 and 676.

"Upon application of complainant, D. D. Robertson, Receiver, the said petitioner and cross-complainant, J. M. Davenport, is taxed with all the costs incident to the filing of said cross-bill in this cause, the Court being of the opinion that the filing of said cross-bill was unnecessary and the same relief could have been had by an intervening petition. The complainant, D. D. Robertson, Receiver, is however, taxed with the cost of the stipulations of fact, relative to said Dyer, Tennessee Sewer bonds, and other evidence in this cause filed for the purpose of identifying said bonds Nos. 39 and 40. No part of the cost of the filing of the original bill and process is to be paid by the defendant and cross-complainant, J. M. Davenport, the same being taxed against the complainant, D. D. Robertson, Receiver."

D. D. Robertson, receiver, etc., filed five assignments asserting error in the foregoing decree in favor of J. M. Davenport, which assignments (omitting citations therein to the transcript) are as follows:

"1. The Chancellor erred in declining, failing and refusing to adjudge and decree that said certificates of deposit issued to the said J. M. Davenport and G. W. Howard created the relationship of debtor and creditor between said Citizens' Bank and the said Davenport and Howard.

"2. The Chancellor erred in adjudging and decreeing said Davenport was entitled to recover from the Bank and D. D. Robertson, its Receiver, said bonds Nos. 39 and 40.

"3. The Chancellor erred in declining, failing and refusing to sustain the exceptions of the complainant, D. D. Robertson, Receiver, to the stipulations of fact filed in this cause on behalf of J. M. Davenport and others, and it was error in the Court to overrule said exceptions.

"The stipulations of fact in substance are as follows: That bond #39 for $500, interest payable April and October, and maturing April 1, 1936, was sold by said Citizens' Bank on the 4th day of October, 1926, to J. M. Davenport for the sum of $511.67, and said entry on said Bond Register of said Citizens' Bank shows under miscellaneous bonds deposited that on October 4, 1926, said Davenport deposited in said Bank $500 in Dyer, Tennessee, Sewer Bonds maturing in 1936.

"Said stipulations of fact further show that bond No. 40 for $500 maturing in 1936 was sold by said Bank on January 5, 1928, to said Davenport and said Bond Register of said Bank shows that on January 5, 1928, there was deposited in said Bank a Dyer, Tennessee Sewer bond by said Davenport.

"These stipulations were filed with the right reserved to all parties to file such exceptions as they might desire.

"D. D. Robertson, Receiver, filed exceptions to the competency and relevancy of said stipulations, alleging that said Davenport was undertaking to change the written contract by extraneous evidence and also was undertaking to supply the description of the bonds by extraneous evidence.

"The exceptions of D. D. Robertson were overruled by the Chancellor and the said stipulations held to be competent.

"4. The Chancellor erred in declining, failing and refusing to sustain the exceptions of D. D. Robertson, Receiver of the Citizens' Bank, to the testimony of the said J. M. Davenport wherein said Davenport undertook to identify said bonds by his parol evidence, and it was error in the Court to overrule said exceptions.

"Said Davenport testified in substance that he left said Dyer, Tennessee, bonds with the Citizens' Bank for safe-keeping; that he purchased both of said bonds from the Citizens' Bank and deposited the same in said Bank on the day that he bought them. To this evidence D. D. Robertson, Receiver, excepted for the reason that the same is offered in an effort to alter, change and contradict the terms of the contract, to-wit: the certificate of deposit, and for the further reason that there is an effort to supply the identity of the bonds deposited by parol evidence.

"The Chancellor erroneously overruled said exceptions and held said parol testimony to be competent.

"5. The Chancellor erred in taxing any of said cost against the complainant, D. D. Robertson, Receiver, except the cost incident to the filing of the said original bill and process thereunder."

In his reply, appellee Davenport joins issue upon each and all of the foregoing assignments of error filed by the receiver.

The record facts for consideration with respect to the claim of appellee Davenport appear mainly from a written statement of agreed facts, styled "Stipulation of facts as to Dyer, Tennessee, Bonds," signed by counsel for all the parties and filed in the case, and from the depositions of J. M. Davenport and Carson F. Vaughan.

The concluding paragraph of said stipulation is as follows:

"We, the undersigned agree as to the above stated facts, and we agree that this agreement may be filed and read as evidence in said cause above styled, and under any petition filed by the claimants or depositors of Dyer, Tennessee, sewer 5½% bonds, or any other bonds

involved in this cause. The right is reserved to all parties to file such exceptions as they may desire.''

The testimony of Carson F. Vaughan, so far as material, has been heretofore stated herein.

The findings of fact set forth in the chancellor's decree on Davenport's claim, above quoted, are amply supported by the testimony of appellee Davenport, the certificates of deposit exhibited by him, and the aforesaid ''Stipulation of facts as to Dyer, Tennessee, Bonds.''

The identical bonds deposited by appellee Davenport as alleged in his petition are clearly traced into the hands of the receiver and shown to be now in his possession. But the contention of the receiver is that these bonds cannot be thus traced and identified by reference to the certificates of deposit alone; that the certificates of deposit constitute the contracts between the depositor, Davenport; and the bank; that these ''contracts'' are complete and unambiguous on their face, and must be construed without regard to parol or extraneous evidence; and that, when thus construed, they create the relation of debtor and creditor between the bank and Davenport.

It is insisted for Davenport that the certificates of deposit create the relation of bailor and bailee between him and the Citizens' Bank; and the chancellor so held.

As we have held with respect to the certificate of deposit No. 508 issued to appellant Howard, the certificates of deposit exhibited by appellee Davenport are of a dual nature—they are both receipts and contracts. In so far as these certificates acknowledge the receipt by the Citizens' Bank of Dyer, Tennessee, Sewer bonds, they are subject to explanation, and even contradiction, by parol evidence. Moreover, parol evidence is not to be altogether excluded when offered in aid of the interpretation and construction of written contracts.

''While oral evidence is not admissible to vary the terms of a contract in writing, yet it may be admitted for the purpose of identifying and applying the terms of the writing to the subject-matter. Accordingly, parol evidence is admissible to show a note produced in evidence to be the one secured by a mortgage, when it corresponds in some but not in all respects with that described in the condition in the mortgage.'' 10 R. C. L., pp. 1080, 1081, sec. 277. See acc. Fitzpatrick v. School Commissioners, 7 Humph., 224, 228, 46 Am. Dec., 76.

''Extrinsic evidence may be necessary to identify the subject-matter to which the instrument refers.'' 4 Jones on Evidence (2 Ed.), sec. 1552. p. 2836 (citing many cases, and among them Dorris v. King [Tenn. Ch. App.], 54 S. W., 684, and Turner v. Jackson [Tenn. Ch. App.], 63 S. W., 511).

''Extrinsic evidence is admissible not only to identify the subject-

matter, but also to give effect to a written instrument by applying it to its proper subject-matter." Id., p. 2838.

It is insisted for the receiver that it was not competent to supply, by parol or other extrinsic evidence, the serial numbers of the bonds for which the certificates were issued to appellee Davenport, and to thus identify the bonds deposited by him. In support of this contention cases are cited which involved contracts for the sale of land —contracts within the statute of frauds—such, for example, as Dougherty v. Chesnutt, 86 Tenn., 1, 5 S. W., 444; Ragsdale v. Mc-Fall, 145 Tenn., 684, 690, 237 S. W., 66.

In the instant case, we are not dealing with contracts within the statute of frauds, but with a contract which would have been equally binding without a writing. "The rule would be different where the contract, under the statutes of frauds, is required to be in writing, or, at any rate, would have less extensive application, as in such cases the terms of the contract must be found entire in the contract itself as to stipulations and subject-matter." New York & E. T. Iron Co. v. Greene County Iron Co., 11 Heisk., 434, 445. See also, on this point, Dorris v. King, supra.

■ For the reasons stated more at length in the discussion of appellant Howard's assignments of error, ante, we are of the opinion that the certificates of deposit held by appellee Davenport evidence, upon their face, a contract in the nature of a bailment of the bonds therein described, and we hold that it was competent to show by evidence dehors the certificates, the serial numbers of the bonds deposited.

■ The statement of J. M. Davenport in his deposition that he left said bonds with the Citizens' Bank "for safe-keeping" was not, in strictness, admissible, but it was, in this instance, harmless, and hence immaterial, for the certificates themselves, as we have construed them, evidenced a bailment, and that would be the effect of a deposit for safe-keeping.

We find no error in the decree of the chancellor with respect to the claim of appellee Davenport, and it is in all things affirmed.

■ The chancellor did not err in taxing the costs incident to the filing of their respective cross-bills against G. W. Howard and J. M. Davenport. The cross-bills were unnecessary, as they could have obtained the same relief through their intervening petitions filed pursuant to the leave granted by the chancellor in response to the prayer of the original bill of the receiver. Woodard v. Bird, 105 Tenn., 671, 687, 59 S. W., 143.

To the extent and for the reasons pointed out in this opinion, appellant Howard's assignments of error are sustained, and the decree with respect to his claim is reversed, and a decree will be entered allowing him a recovery of his ratable share of said $11,400 of United States 4¼ per cent Fourth Liberty Loan bonds now in the hands of

the receiver (or of the proceeds thereof if necessary to sell same for division among the owners thereof), and the fund of $1,325.05 surplus proceeds of bonds sold by the Citizens' Union National Bank, also in the hands of the receiver, such ratable share of appel.ant Howard to be in the proportion that the bonds deposited by him ($1,050) bears to the whole amount of such bonds, viz., $31,100; and the cause will be remanded to the chancery court of Giles county for such further proceedings and decrees under the original bill and intervening petitions, in harmony with the opinion and decrees of this court, as may be necessary and proper.

The costs of the appeal will be adjudged against D. D. Robertson, receiver, etc., and the surety on his appeal bond.

Crownover and DeWitt, JJ., concur.